**Saad ZERREI, Petitioner,**

v.

**Alberto R. GONZALES, Respondent.**

**Docket No. 05–3390–AG.**

United States Court of Appeals, Second Circuit.

Submitted: Dec. 8, 2006.

Decided: Dec. 12, 2006.

Lynn Neugebauer, Safe Horizon Immigration Law Project, Jackson Heights, NY, for Petitioner.

Michael J. Garcia, United States Attorney for the Southern District of New York (David S. Rubenstein, Kathy S. Marks, Assistant United States Attorneys, of counsel), New York, NY, for Respondent.

Before KEARSE and STRAUB, Circuit Judges, and KEENAN, District Judge.*

---

* The Honorable John F. Keenan, United States District Judge for the Southern District of New York, sitting by designation.

1. On March 1, 2003, less than one week after it filed the Notice to Appear in this case, the INS was reconstituted as the Bureau of Immigration and Customs Enforcement and the

PER CURIAM.

On February 8, 2003, the Immigration and Naturalization Service[1] commenced removal proceedings against Petitioner Saad Zerrei, charging him with remaining in the United States for a time longer than permitted, and seeking his removal under § 237(a)(1)(B) of the Immigration and Naturalization Act, 8 U.S.C. § 1227(a)(1)(B). Specifically, the Notice to Appear alleged (1) that Zerrei is a national and citizen of Morocco; (2) that he was admitted to the United States on or about September 30, 1997 as a nonimmigrant visitor with authorization to remain for a temporary period not to exceed March 29, 1998; (3) that he applied for and was granted an extension of his nonimmigrant stay valid until September 29, 1998; and (4) that he remained in the United States beyond September 29, 1998 without proper authorization. Zerrei appeared by counsel before Immigration Judge ("IJ") Adam Opaciuch on September 17, 2003, at which time he denied the charge of removability, as well as the underlying factual allegations.

On February 25, 2004, following several continuances and several days of hearing, the IJ rendered an oral decision, in which he found that DHS had proved the predicate facts for removal, and ordered that Zerrei be removed from the United States to Morocco. *In re Zerrei*, No. A 95 959 870 (Immig. Ct. N.Y. City Feb. 25, 2004). The BIA adopted and affirmed the IJ's decision in an opinion issued June 2, 2005. *In re Zerrei*, No. A 95 959 870 (B.I.A. June 2, 2005).

In his petition for review to this Court, Zerrei argues that the order of removal

Bureau of U.S. Citizenship and Immigration Services, within the newly-created Department of Homeland Security ("DHS"). *See Monter v. Gonzales*, 430 F.3d 546, 548 n. 1 (2d Cir.2005). Because the IJ and the BIA issued their rulings after March 1, 2003, we refer to the agency as DHS in this opinion.

must be vacated because the BIA wrongly determined that DHS established removability by clear and convincing evidence. Zerrei further challenges the removal order on the ground that the National Security Entry–Exit Registration System ("NSEERS"), which required him to register and provide additional information to DHS,[2] lacked statutory authorization and violated his Fifth Amendment right to equal protection.[3]

■■■ We first address Zerrei's contention that DHS failed to carry its burden of proving removability. When removal proceedings are brought against an alien who has been admitted to the United States, the government bears the burden of establishing that the alien is removable by clear and convincing evidence. 8 U.S.C. § 1229a(c)(3)(A); *see Woodby v. INS,* 385 U.S. 276, 286, 87 S.Ct. 483, 17 L.Ed.2d 362 (1966) (holding that "no deportation order may be entered unless it is found by clear, unequivocal, and convincing evidence that the facts alleged as grounds for deportation are true"); *Almeida–Amaral v. Gonzales,* 461 F.3d 231, 234 (2d Cir.2006). In order to prove that an alien is subject to removal for overstaying his visa, DHS "need only show that the alien was admitted as a nonimmigrant '. . . for a temporary period, that the period has elapsed, and that the nonimmigrant has not departed.'" *Matter of Teberen,* 15 I. & N. Dec. 689, 690 (B.I.A.1976) (quoting *Milande v. INS,* 484 F.2d 774, 776 (7th Cir.1973));

*accord Wellington v. INS,* 710 F.2d 1357, 1359 (8th Cir.1983); *Shoaee v. INS,* 704 F.2d 1079, 1082 (9th Cir.1983); *Sadegh–Nobari v. INS,* 676 F.2d 1348, 1351 (10th Cir.1982); *Ho Chong Tsao v. INS,* 538 F.2d 667, 668 (5th Cir.1976), *cert. denied,* 430 U.S. 906, 97 S.Ct. 1176, 51 L.Ed.2d 582 (1977). We will uphold a determination by the BIA that an alien is removable if substantial evidence supports the finding by clear and convincing evidence—that is, unless "any rational trier of fact would be compelled to conclude that the proof did not rise to the level of clear and convincing evidence." *Francis v. Gonzales,* 442 F.3d 131, 138–39 (2d Cir.2006); *see Nakamoto v. Ashcroft,* 363 F.3d 874, 881–82 (9th Cir. 2004).

■■■ In the proceedings before the IJ, DHS presented three documents to show that Zerrei was a nonimmigrant alien who had overstayed his visa: (1) a copy of a passport bearing Zerrei's name; (2) a computer record from the INS Non–Immigration Information System ("NIIS record"), listing Zerrei's country of citizenship, passport number, date and place of admission to the United States, and the end date of his authorized admission; and (3) a computer printout from the INS Claims Mainframe System ("Claims record"). The IJ specifically inquired whether Zerrei had any objections to the above materials; in response, Zerrei's counsel objected to the Claims record on the ground that it had not been certified or otherwise authenticated, but made no objections to the first

---

**2.** Under NSEERS, all nonimmigrant males, sixteen years or older, from countries that the Attorney General identified as presenting elevated national security concerns were required to report to the INS for registration, fingerprinting, and photographing. 8 C.F.R. § 264.1(f)(4); *see Nat'l Council of La Raza v. Dep't of Justice,* 411 F.3d 350, 353 (2d Cir. 2005). Morocco was placed on the list of designated countries in November 2002. *See* 67 Fed.Reg. 70526 (Nov. 22, 2002).

**3.** The BIA did not address Zerrei's challenge to the NSEERS program on the merits, citing its lack of authority to pass judgment on the constitutionality of the Immigration and Naturalization Act or its implementing regulations. *See In re Fuentes–Campos,* 21 I. & N. Dec. 905, 912 (B.I.A.1997) (citing *Matter of C-,* 20 I. & N. Dec. 529 (B.I.A.1992)).

two documents. Accordingly, in his decision, the IJ did not explicitly discuss the Claims record, and instead based his determination solely on the passport and NIIS record. The BIA sustained the IJ's finding on an even narrower evidentiary basis: It held that the passport, even without the aid of the NIIS record, sufficiently established Zerrei's alienage and overstay.

■ Where, as here, the BIA adopts and affirms the IJ's decision but modifies it in one respect, we review the IJ's decision as modified by the BIA. *See Ming Xia Chen v. BIA,* 435 F.3d 141, 144 (2d Cir. 2006). Therefore, although Zerrei asserts that the IJ erroneously considered the NIIS and Claims records, we confine our analysis to his arguments concerning the passport, on which the BIA relied. In particular, Zerrei contends that the passport was improperly taken into evidence because it was introduced "as part of a group exhibit, with no testimony as to what it was, how it was obtained, or how it relate[d]" to him. In addition, Zerrei argues that the passport, without more, was insufficient proof of his alienage.

■■ The Federal Rules of Evidence do not apply in removal proceedings; rather, "[e]vidence is admissible provided that it does not violate the alien's right to due process of law." *Lin v. U.S. Dep't of Justice,* 459 F.3d 255, 268 (2d Cir.2006). The standard for due process is satisfied if the evidence "is probative and its use is fundamentally fair," fairness in this context being "closely related to the reliability and trustworthiness of the evidence." *Id.* (internal quotation marks omitted); *see Felzcerek v. INS,* 75 F.3d 112, 115 (2d Cir.1996). This standard was met in this case. As noted, Zerrei's counsel voiced no objection to the admission of the passport or to the IJ's consideration of it, forgoing many obvious opportunities to do so. In fact, Zerrei's counsel treated the document as an authentic copy of Zerrei's passport, at one point even representing to the IJ that Zerrei intended to apply for an extension on his expired passport using the copy provided by the government. Perhaps most tellingly, Zerrei has never, at any point during these proceedings, asserted that the passport is not his or attempted to challenge the accuracy of the information contained therein. *Cf. Felzcerek,* 75 F.3d at 117 (holding that "a Form I–213 is presumptively reliable and can be admitted in deportation proceedings without giving the alien the opportunity to cross-examine the document's author, at least when the alien has put forth no evidence to contradict or impeach the statements in the report"). *Compare Murphy v. INS,* 54 F.3d 605, 610 (9th Cir.1995) (finding that an unauthenticated Form I–213 merited little or no weight because the petitioner "disputed the significant information [on the form], such as place of birth, names of parents, and use of the aliases" and also "provided information regarding the source of the information recorded on the form, an INS informant who apparently had some ulterior motive to make statements against [petitioner]"). Under these circumstances, admission of the passport was fundamentally fair and in accordance with due process. We therefore conclude that the BIA appropriately gave the passport due weight in determining Zerrei's removability.

■ We further agree with the BIA that the passport constitutes "clear, unequivocal, and convincing evidence" of Zerrei's alienage and overstay, and that resort to the other documents is unnecessary. *Woodby,* 385 U.S. at 286, 87 S.Ct. 483. A stamp in the passport plainly shows that Zerrei was admitted to the United States on September 30, 1997 as a B–2 nonimmigrant visitor, with authorization to remain through March 29, 1998. Furthermore, Zerrei does not dispute the finding of the IJ, affirmed by the BIA, that he was not granted an extension to remain lawfully in

the United States beyond September 29, 1998. *See Cabral–Avila v. INS*, 589 F.2d 957, 959 (9th Cir.1978) (holding that once the INS establishes a prima facie case of deportability by clear and convincing evidence, the burden shifts to the alien to demonstrate that he has secured authorization to remain), *cert. denied*, 440 U.S. 920, 99 S.Ct. 1245, 59 L.Ed.2d 472 (1979); *accord Zaitona v. INS*, 9 F.3d 432, 434 (6th Cir.1993); *Bustos–Torres v. INS*, 898 F.2d 1053, 1058 (5th Cir.1990). Based on this record, the BIA reasonably concluded that DHS had proved by clear and convincing evidence that Zerrei was admitted as a nonimmigrant for a specific period of time, that the period elapsed, and that he failed to depart at that time. *See Francis*, 442 F.3d at 138–39.

 The next issue is whether, having found that Zerrei is removable, we must nevertheless decide his legal and constitutional challenges to the NSEERS program. We conclude that we do not, for even assuming that Zerrei could show that NSEERS is *ultra vires* or unconstitutional, he has failed to demonstrate any prejudice. First, although Zerrei claims that he was singled out for removal because of his registration under NSEERS, nothing in the record substantiates this speculation. *See Zafar v. U.S. Attorney Gen.*, 461 F.3d 1357, 1367 (11th Cir.2006) (rejecting the petitioners' argument that the NSEERS program infringed their equal protection rights by "precipitat[ing] them being placed in these *discretionary* removal proceedings by the Attorney General" because the record did not support the argument) (citing *Reno v. Am.-Arab Anti–Discrimination Comm.*, 525 U.S. 471, 489–92, 119 S.Ct. 936, 142 L.Ed.2d 940 (1999)); *Ahmed*

*v. Gonzales*, 447 F.3d 433, 439–40 (5th Cir.2006) (reaching the same conclusion in a case where the petitioner argued that "by registering for NSEERS, he alerted the government to the fact that he had overstayed his original crewman's visa," and explaining the petitioner's registration "had nothing to do with" the immigration judge's finding that the petitioner was removable under 8 U.S.C. § 1227(a)(1)(B)).

Second, there is no evidence in this record suggesting that DHS obtained the copy of Zerrei's passport through the NSEERS program.[4] *See Ali v. Gonzales*, 440 F.3d 678, 681–82 (5th Cir.2006) (holding, where the petitioner failed to identify "a particular piece of evidence that was obtained pursuant to NSEERS and used against him," that "any violation of [his] equal protection rights would be harmless"). In any event, Zerrei has failed to show how this alleged link to NSEERS undermined the fairness or reliability of the deportation hearing, or required suppression of the passport. *See INS v. Lopez–Mendoza*, 468 U.S. 1032, 1050–51, 104 S.Ct. 3479, 82 L.Ed.2d 778 (1984) (holding that the exclusionary rule does not apply in the immigration context, except when there are "egregious violations of Fourth Amendment or other liberties that might transgress notions of fundamental fairness and undermine the probative value of the evidence obtained"); *Montero v. INS*, 124 F.3d 381, 386 (2d Cir.1997) ("Beyond violations of the Fourth Amendment, it is clear from *Lopez–Mendoza* that the exclusionary rule is applicable, if at all, only to deprivations that affect the fairness or reliability of the deportation proceeding."); *cf. Kandamar v. Gonzales*, 464 F.3d 65, 74 (1st Cir.2006) (holding, where the petitioner claimed that the government had seized

---

4. The record shows that Zerrei's counsel requested, and was granted, an adjournment of the removal proceedings in order to consider filing a motion to suppress evidence that the government had allegedly obtained through NSEERS. No suppression motion was ever filed.

his passport during the NSEERS interview in violation of his Fourth Amendment rights, that the seizure did not warrant reversal of the removal order because there was no "egregious government misconduct" and because "there can be little doubt about DHS's authority to inspect and photograph the passport and other documentation").

In short, even if Zerrei could show that the NSEERS program exceeded the Attorney General's authority, or that it violated the equal protection guarantee of the Fifth Amendment, the fact would remain that Zerrei has overstayed his visa and has no right to remain in this country. We therefore express no opinion as to the merits of Zerrei's arguments concerning NSEERS.

For the foregoing reasons, the petition is DENIED. Our review having been completed, the stay of removal that the Court previously granted in this petition is VACATED.