*Medley v. Garland*

BIA
Farber, IJ
A 206 030 427

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

August Term 2022

(Argued: October 13, 2022      Decided: June 15, 2023)

Docket No. 20-3079

————————————————

LEON LEONARD MEDLEY,

*Petitioner*,

*v.*

MERRICK B. GARLAND, UNITED STATES ATTORNEY GENERAL,

*Respondent.*

————————————————

ON PETITION FOR REVIEW FROM THE
BOARD OF IMMIGRATION APPEALS

————————————————

Before:

LEVAL, CHIN, and BIANCO, *Circuit Judges*.

————————————————

Petition for review of a decision of the Board of Immigration Appeals affirming the decision of an Immigration Judge denying petitioner's motions to terminate removal proceedings. Petitioner argues that regulatory and constitutional violations that occurred during his allegedly illegal arrest and interrogation required termination of the proceedings.

PETITION DENIED.

---

RYAN BREWER (Zoe Levine, *on the brief*), The Bronx Defenders, Bronx, New York, *for Petitioner*.

TIM RAMNITZ, Senior Litigation Counsel (Shelley R. Goad, Assistant Director, *on the brief*), *for* Brian Boynton, Assistant Attorney General Civil Division, U.S. Department of Justice, Washington, District of Columbia, *for Respondent*.

---

CHIN, *Circuit Judge*:

Petitioner Leon Leonard Medley seeks review of a June 25, 2019, decision of the Board of Immigration Appeals (the "BIA") affirming the decision of an Immigration Judge (the "IJ") denying his motions to terminate his removal proceedings. Medley is a 32-year-old native and citizen of Jamaica who entered the United States in 2006 and overstayed his visitor visa. On December 20, 2017,

2

Immigration and Customs Enforcement ("ICE") officers arrested Medley pursuant to a warrant issued by the Department of Homeland Security ("DHS"). In removal proceedings before the IJ, Medley argued that the immigration court lacked jurisdiction over his removal proceedings and the officers violated agency regulations and his fundamental rights during his arrest and interrogation. The IJ rejected the jurisdictional argument and held that termination of the removal proceedings was not warranted because evidence of Medley's removability existed independent of any evidence obtained as a result of his arrest. The BIA affirmed. We agree that the agency had jurisdiction and that termination of the removal proceeding was not warranted. Accordingly, we deny the petition for review.

## *BACKGROUND*

### I.     The Facts

The following facts are drawn from Medley's affidavit in support of his multiple motions to terminate and the Form I-213 submitted by DHS detailing the circumstances of his arrest. *See* S. App'x at 37-43; A.R. at 1865-68. As noted below, some facts are sharply disputed.

3

Medley last entered the United States on June 7, 2006, on a non-immigrant visa and was authorized to stay until December 6, 2006. He remained in the country beyond that date, settling in the New York area. He is married to a U.S. citizen and has three U.S. citizen children.

From 2009 to 2017, Medley was arrested thirty-two times and charged with, *inter alia*, assault, attempted assault, resisting arrest, strangulation, endangering the welfare of a child, burglary, criminal mischief, domestic violence, menacing, criminal possession of a weapon, harassment, and unlawful possession of marijuana. These arrests resulted in seven convictions for disorderly conduct, one conviction for second degree harassment, and one conviction for unlawful possession of marijuana. With regard to the conviction for second degree harassment, an order of protection was taken out against him for the benefit of his mother. The criminal charges and convictions for marijuana possession and disorderly conduct alerted DHS to his presence. On September 19, 2017, DHS issued a Notice to Appear (the "NTA") and a warrant for Medley's arrest as a noncitizen subject to removal.[1]

---

[1] This opinion uses the term "noncitizen" as equivalent to the statutory term "alien." *See Nasrallah v. Barr*, 140 S. Ct. 1683, 1689 n.2 (2020); *Santos-Zacaria v. Garland*, No. 21-1436, 2023 WL 3356525, n.1 (U.S. May 11, 2023).

On the morning of December 20, 2017, three ICE officers arrested Medley inside a 7-Eleven convenience store in New York City. The officers approached Medley and, after he provided them with his name, proceeded to arrest him. Medley was accompanied by his wife and three-week-old daughter. He had left the hospital earlier that day, following a three-night stay to treat an infected wart, which was surgically removed from his hand, and he had intended to return to the hospital that same day, after running necessary errands.

The parties differ as to how the arrest transpired. Medley alleges that he asked the officers to be careful while arresting him because he had just had surgery and his hand was still bandaged. He contends that the officers ignored his entreaties and pushed him against a display rack, causing Medley's hand to begin bleeding through the bandage as they handcuffed him. The officers also seized and discarded Medley's pain medication and ignored his multiple requests that he be taken back to the hospital to treat his hand. When the officers searched Medley's pockets, they found a "Know Your Rights" card that Medley's immigration lawyer had given him, as well as the lawyer's business card. The officers threw the "Know Your Rights" card on the ground and kept the business card.

DHS contends, however, that Medley was arrested without incident. According to the Form I-213, Medley informed the officers of his recent hospital stay but otherwise told them that he was in good health.

According to Medley, it was only after he was handcuffed and placed into a vehicle that the officers identified themselves as immigration officials. The officers proceeded to drive Medley to the ICE facility at 26 Federal Plaza in downtown Manhattan. At one point, Medley alleges, the officers pulled over and took a group selfie outside with the vehicle in the background.

Upon arriving at the facility, Medley was placed in a holding cell and then brought to a room where several officers -- including some of those involved in the arrest -- began questioning him. Medley told the officers that he would provide his name and other biographical details but that he would not answer any other questions without his lawyer present. He asked that the officers contact his lawyer using the business card they had taken, but they declined to do so.

The officers continued to question Medley and attempted to get him to sign documents, which Medley refused to do. Medley contends that he requested and was refused food and water throughout the interrogation.

6

According to DHS's account, however, Medley was provided with a meal approximately one hour after arriving at the facility.

After his lawyer sent a message to the facility invoking Medley's rights, the officers stopped questioning him. Medley was then moved to another facility where he received medical care for his hand.

## II.    Procedural History

During the interrogation at the ICE facility, the officers served Medley with the NTA and DHS arrest warrant. The NTA charged Medley with removability as a result of his overstaying his visa, pursuant to § 237(a)(1)(B) of the Immigration and Nationality Act (the "INA"). 8 U.S.C. § 1227(a)(1)(B). The NTA did not include the date, time, and location of the hearings related to his removal proceedings. Medley was subsequently sent notices that provided these missing details and attended all of his hearings with counsel. On December 29, 2017, DHS initiated removal proceedings against Medley pursuant to the NTA.

On February 15, 2018, Medley filed a motion to terminate the removal proceedings based on his purportedly illegal arrest. S. App'x at 33. He alleged that the ICE agents violated his Fourth and Fifth Amendment rights and agency regulations by using excessive force, failing to identify themselves, failing

7

to obtain an arrest warrant, conducting a warrantless search, and leaving him unattended in a vehicle. He also alleged that the agents attempted to coerce him into making statements, violated his right to counsel, and disregarded his right to medical attention during the post-arrest interrogation at the ICE facility. On February 22, 2018, with the assistance of counsel, Medley filed written pleadings in which he conceded his removability for overstaying his visa. A.R. 2060. During a hearing on March 16, 2018, the IJ orally denied the motion to terminate. A.R. 908-17.

Also on March 16, 2018, Medley alternatively filed an application for cancellation of removal pursuant to § 240A(b) of the INA. 8 U.S.C. § 1229b(b)(1). This provision authorizes the Attorney General to cancel the removal of a noncitizen who meets certain statutory requirements, including continuous presence in the country of no less than 10 years, a demonstration of good moral character, no convictions under 8 U.S.C. §§ 1182(a)(2), 1227(a)(2), or 1227(a)(3), and a showing that removal would cause unusual hardship for the applicant's U.S. citizen spouse, parent, or child. 8 U.S.C. § 1229b(b)(1).

On August 17, 2018, Medley filed a second motion to terminate his removal proceedings, pursuant to *Pereira v. Sessions*, 138 S. Ct. 2105 (2018). He

alleged that the immigration court lacked jurisdiction over the proceedings because the initial NTA he received omitted details regarding the date, time, and location of his hearings.

On September 13, 2018, the IJ denied both Medley's motions to terminate in a written decision, and on June 25, 2019, the BIA affirmed. Medley appealed to this Court on July 8, 2019. *See Medley v. Barr*, No. 19-2056, Dkt. 1 (2d Cir. July 9, 2019).

On November 13, 2019, however, the BIA reopened proceedings on Medley's application for cancellation of removal, after Medley filed a motion based on a vacatur of his prior state convictions for marijuana possession. As a consequence, on November 27, 2019, the parties entered into a stipulation dismissing the petition for review in No. 19-2056 for lack of jurisdiction in light of the reopening of the proceedings by the BIA. This Court so ordered the stipulation. *See* S. App'x at 23-24; *Medley v. Barr*, No. 19-2056, Dkt. 40 (2d Cir. Dec. 3, 2019). On March 4, 2020, after conducting three hearings, the IJ denied Medley's cancellation application. The BIA affirmed on August 31, 2020.

Medley filed the instant petition for review on September 9, 2020. Medley's petition for review included a motion to stay removal proceedings and

an appeal of the BIA's denials of both his motions to terminate proceedings and his application for cancellation of removal. This Court granted the motion to stay removal proceedings and dismissed the appeal of his application for cancellation of removal for lack of jurisdiction. *Medley v. Garland*, No. 20-3079, Dkt. 57 (2d Cir. July 13, 2021). The claim relating to the agency's denial of Medley's motions to terminate remains before us.

## *DISCUSSION*

We review the agency's factual findings for substantial evidence and legal conclusions *de novo*. *See Zaman v. Mukasey*, 514 F.3d 233, 237 (2d Cir. 2008) (per curiam); *Diallo v. INS*, 232 F.3d 279, 287 (2d Cir. 2000). If the BIA's decision adopts and affirms the decision of the immigration court, we review the two decisions together. *Ojo v. Garland*, 25 F.4th 152, 159 (2d Cir. 2022) (citing *Ruqiang Yu v. Holder*, 693 F.3d 294, 297 (2d Cir. 2012)).

Medley advances two arguments on appeal. First, he contends that the immigration court lacked jurisdiction over the proceedings under *Pereira* and *Niz-Chavez v. Garland*, 141 S. Ct. 1474 (2021), because the NTA omitted logistical details regarding his hearings. Second, he argues that the officers' actions during his arrest and interrogation amounted to regulatory and constitutional violations

that required termination of his removal proceedings under *Rajah v. Mukasey*, 544

F.3d 427 (2d Cir. 2008). We address each argument in turn.

## I. Jurisdiction

Medley's argument that the agency lacked jurisdiction over his

removal proceedings because the NTA lacked the date, time, and location of his

removal hearings is foreclosed by our precedents in *Chery v. Garland*, 16 F.4th 980

(2d Cir. 2021), and *Banegas Gomez v. Barr*, 922 F.3d 101 (2d Cir. 2019). In those

cases, we held that the Supreme Court's decisions in *Pereira* and *Niz-Chavez* on

the consequences of incomplete NTAs did not bear on an immigration court's

jurisdiction but rather applied narrowly to the stop-time rule, a provision of the

INA that applies only to an application for cancellation of removal. *See Chery*, 16

F.4th at 987 ("As with *Pereira*, *Niz-Chavez* focused only on the stop-time rule in 8

U.S.C. § 1229b(d)(1) and did not address the effect of a defective NTA on an IJ's

jurisdiction."); *Banegas Gomez*, 922 F.3d at 110 ("[W]e conclude that *Pereira*'s self-

described disposition of this narrow question is not properly read to void

*jurisdiction* in cases in which an NTA omits a hearing time or place." (internal

quotation marks and citation omitted)). In his briefing in this Court, Medley

acknowledged that his jurisdictional argument was rejected in *Chery* and *Banegas*

11

*Gomez* but explained that he was relying on the pendency of a rehearing petition in *Chery* to preserve the issue. That petition has now been denied. *See Chery v. Garland*, No. 18-1036, Dkt. 202 (2d Cir. Mar. 30, 2022).

Accordingly, Medley's jurisdictional argument fails.

## II. Pre-Hearing Violations

On the merits, Medley argues that his removal proceedings must be terminated because the ICE officers violated agency regulations and his fundamental rights during his arrest and subsequent interrogation. He asserts that such violations require termination either with or without prejudice pursuant to this Court's holding in *Rajah*. 544 F.3d at 447. For the reasons set forth below, we are not persuaded.

### A. Applicable Law

To prove that a noncitizen is subject to removal for overstaying his visa, the government must "only show that the alien was admitted as a nonimmigrant for a temporary period, that the period has elapsed, and that the nonimmigrant has not departed." *Zerrei v. Gonzales*, 471 F.3d 342, 345 (2d Cir. 2006) (per curiam) (internal quotation marks and ellipses omitted). The government bears the burden of establishing that the noncitizen is subject to

12

removal by clear and convincing evidence. *See id.; see also Woodby v. INS*, 385 U.S. 276, 285-86 (1966). We uphold the BIA's removability determinations if its findings are supported by substantial evidence. *Mei Chai Ye v. U.S. Dep't of Just.*, 489 F.3d 517, 523 (2d Cir. 2007); *Francis v. Gonzales*, 442 F.3d 131, 137-38 (2d Cir. 2006).

If a noncitizen concedes removability and does not allege that the concession was illegally obtained, then the "voluntary concessions of removability during [the] removal proceedings are admissible as independent evidence, notwithstanding the fact that [the] proceedings resulted from unlawful arrests." *Vanegas-Ramirez v. Holder*, 768 F.3d 226, 236 (2d Cir. 2014) (citing *Katris v. INS*, 562 F.2d 886, 867-69 (2d Cir. 1977) (per curiam); *Avila-Gallegos v. INS*, 525 F.3d 666, 666-67 (2d Cir. 1975); *La Franca v. INS*, 413 F.2d 686, 688-89 (2d Cir. 1969)). Similarly, where a petitioner opposes deportation proceedings based on an allegedly illegal arrest but does not contest any of the evidence offered against him, "the mere fact of an illegal arrest has no bearing on a subsequent deportation proceeding." *INS v. Lopez-Mendoza*, 468 U.S. 1032, 1040 (1984) (alteration adopted) (internal quotation marks and citation omitted). Despite the nature of the arrest, "the removal of an individual could still be supported by

13

otherwise admissible 'evidence *not derived directly* from,' but rather '*gathered independently* of, or *sufficiently attenuated* from,' the arrest." *Vanegas-Ramirez*, 768 F.3d at 234 (quoting *Lopez-Mendoza*, 468 U.S. at 1043).

In *INS v. Lopez-Mendoza*, the Supreme Court held that the exclusionary rule, which bars the admission of certain evidence in criminal proceedings, did not apply in civil removal proceedings to alleged Fourth Amendment violations. 468 U.S. at 1034, 1050. Yet the Court in *Lopez-Mendoza* left open whether the exclusionary rule might apply in cases of "egregious violations of Fourth Amendment or other liberties that might transgress notions of fundamental fairness and undermine the probative value of the evidence obtained." *Id.* at 1050-51. The Court also considered the challenge of a petitioner who moved to terminate his removal proceedings based on an allegedly illegal arrest but who had "entered no objection to the evidence offered against him." *Id*. at 1040. Instead, the petitioner only contested being summoned to a deportation proceeding following his purportedly illegal arrest. *Id*. The Court observed that "[t]he body or identity of a defendant or respondent in a criminal or civil proceeding is never itself suppressible as a fruit of an unlawful arrest, even if it is conceded that an unlawful arrest, search, or interrogation occurred."

14

*Id*. at 1039-40 (internal quotation marks omitted) (citing *Gerstein v. Pugh*, 420 U.S. 103, 119 (1975); *Frisbie v. Collins*, 342 U.S. 519, 522 (1952); *United States ex rel. Bilokumsky v. Tod*, 263 U.S. 149, 158 (1923)).  It therefore upheld the agency's denial of the petitioner's motions to terminate, based upon the agency's determination that because the evidence of removability was not contested, "the legality of the arrest was not relevant to the deportation proceeding."  *Id*. at 1035. In so holding, the Court stressed that the purpose of a removal proceeding "is not to punish past transgressions but rather to put an end to a continuing violation of the immigration laws."  *Id*. at 1039 ("[A] deportation hearing is intended to provide a streamlined determination of eligibility to remain in this country, nothing more.").

*Lopez-Mendoza* discussed the suppression of evidence in a removal proceeding, rather than a request to terminate removal proceedings because of regulatory or constitutional violations. We have considered the latter issue in other cases.  In *Rajah v. Mukasey*, we considered motions to terminate removal proceedings for "significant regulatory violations" that occurred during the arrest or interrogation phases of removal proceedings.  544 F.3d at 446.  We identified three "possible remedies" for such violations:

(i) invalidation of the deportation orders with prejudice; (ii) suppression of all evidence obtained during the registration and interrogation phases; and (iii) terminating the deportation proceedings without prejudice to the starting of new deportation proceedings.

*Id*. The second remedy -- suppression of evidence -- is not at issue in this case because Medley does not seek the suppression of any evidence obtained during his arrest or interrogation. Nor does he contest that he is removable. Only the first and third remedies -- termination of proceedings with or without prejudice to new deportation proceedings -- are at issue.

While the parties disagree as to some aspects of *Rajah*, we need not resolve the differences.[2] *Rajah* assumed, "without deciding," that pre-hearing

---

[2] The parties differ as to whether prejudice to the outcome of the removal proceedings is required to terminate them. *Rajah* held that "pre-hearing regulatory violations are not grounds for termination, absent prejudice that may have affected the outcome of the proceeding, conscience-shocking conduct, or a deprivation of fundamental rights." *Rajah*, 544 F.3d at 447. Respondent acknowledges that this list is "disjunctive," but contends that the court "later clarifies that prejudice and egregiousness are conjunctive requirements for termination." Resp. Br. at 30. Medley argues that this listing is disjunctive and that termination is required if a pre-hearing violation involves prejudice to a proceeding *or* egregiousness *or* a deprivation of a fundamental right. *See* Pet. Reply Br. at 6. We have previously suggested -- albeit in a summary order -- that this list is disjunctive. *See Alnahham v. Holder*, 371 F. App'x 191, 195 (2d Cir. 2010) (summary order) (holding that termination of proceedings was not warranted because the alleged improprieties "d[id] not rise to the level of being prejudicial, conscience-shocking, or a deprivation of fundamental rights."). Medley's interpretation also finds support in the Ninth Circuit's decision in *Sanchez v. Sessions*, 904 F.3d 643 (9th Cir. 2018). There, although evidence of the noncitizen's removability existed independent of the allegedly illegal stop, the court found that there was ample

violations that were "so egregious as to shock the conscience would call for invalidation of the deportation orders with prejudice to the renewal of deportation proceedings." *Id*. *Rajah* held that pre-hearing violations of a "less culpable" or non-egregious nature could be a basis for termination without prejudice only if the petitioner could show "prejudice that may have affected the outcome of the proceeding." *Id*. at 446-47; *see id*. at 447 ("In the case of *harmless, nonegregious*, pre-hearing violations, termination would provide no benefit other than a windfall delay to the deportable alien." (emphasis added)).

The four petitioners in *Rajah* challenged their deportation proceedings based on, *inter alia*, alleged violations of agency regulations that occurred before their hearings.  544 F.3d at 434.[3]  Pursuant to a national security program instituted after the September 11 attacks, the petitioners were required

---

evidence that the stop was based on the petitioner's race, a "grotesque" and "patently unlawful[]" basis for reasonable suspicion. *Id*. at 656.  The court concluded that this constituted an egregious violation of the agency regulation that such searches be based on reasonable suspicion and held that the petitioner could be entitled to termination of his removal proceedings.  *Id*. at 653, 656.  Here, as discussed below, Medley has not shown either egregiousness or prejudice to the outcome of the proceedings.

[3]      The *Rajah* petitioners also alleged that the registration program lacked statutory authorization, was invalidly promulgated, and violated their equal protection rights. 544 F.3d at 434-39.  They also sought to suppress evidence of their removability that was gathered pursuant to the program, arguing that the evidence was the product of Fourth and Fifth Amendment violations.  *Id*. at 439-43.  These arguments were all rejected.  *Id*. at 435-43.

17

to register, provide fingerprints, and submit to additional questioning by then-INS officials. *Id.* at 433-34. When the registration process revealed that the four petitioners were in the country illegally, all of them were placed in removal proceedings. *Id.* Though it was "undisputed that [the petitioners were] deportable," they alleged that the officials had violated agency regulations while registering, interrogating, and arresting them. *Id.* at 434. The allegations included the violation of the right to counsel, warrantless arrests, the failure of the arresting officer to identify himself and state reasons for arrest, post-arrest questioning conducted by an arresting officer, and coercion. *Id.* at 443-46. The petitioners contended that the violations so infected their proceedings that they required, *inter alia*, suppression of evidence gathered during registration or termination of their removal proceedings without prejudice. *Id.* at 434.

Noting the lack of sufficient factual findings to enable our conclusive review of each claim, with the exception of petitioners' claims regarding access to counsel, which we determined were not violations as a matter of law, we "assume[d] for purposes of argument that [petitioners'] rights under the regulations were violated." *Id.* at 443. We nevertheless held that the violations were not grounds for termination with prejudice because they were not

egregious. *Id*. at 446. In assessing whether the violations might be grounds for termination without prejudice, we reasoned that, "[u]nlike a violation occurring during a hearing, the alien's second deportation hearing would be no more fair than, or even different from, the first." *Id*. at 447. Termination in these circumstances, we concluded, would also provide little deterrent effect and a great enforcement burden on the agency. *See id*. ("[U]sing termination as a remedy for pre-hearing violations promises a substantial drain on agency resources with little gain in immigrants' significant rights under the regulations.").

*Rajah* assumed without deciding that an egregious pre-hearing regulatory violation could lead to termination with prejudice. To determine whether conduct is egregious or conscience-shocking, we look to the Supreme Court's Fourth Amendment jurisprudence as well as our own precedents. These precedents largely arise in the suppression context, but they nevertheless can provide an instructive framework for evaluating egregious conduct.

"[T]here is no one-size-fits-all approach" to assessing egregiousness. *Cotzojay v. Holder*, 725 F.3d 172, 181 (2d Cir. 2013) (quoting *Oliva-Ramos v. Att'y Gen. of U.S.*, 694 F.3d 259, 279 (3d Cir. 2012)). To shock the conscience, the

19

challenged conduct "must not only be wrong; it must be extremely so, 'truly brutal and offensive to human dignity.'" *Mara v. Rilling*, 921 F.3d 48, 78-79 (2d Cir. 2019) (quoting *Lombardi v. Whitman*, 485 F.3d 73, 81 (2d Cir. 2007)).

In *Lopez-Mendoza*, the Supreme Court suggested the exclusionary rule could apply in removal proceedings in the case of pre-hearing, egregious violations of fundamental liberties. 468 U.S. at 1050-51. To support this proposition, the Court cited *Rochin v. California*, 342 U.S. 165 (1952), where the Court held that the defendant's Fourth Amendment rights had been violated by conscience-shocking conduct by the police. Upon entering Rochin's bedroom during a warrantless raid, police officers observed Rochin swallowing two capsules. *Id*. at 166; *People v. Rochin*, 225 P.2d 1, 1 (Cal. Ct. App. 1950). The officers responded by "jump[ing] on him" in an "attempt[] to extract the capsules." *Rochin*, 342 U.S. at 166. When that did not work, the officers took Rochin to the hospital and had a doctor forcibly pump his stomach to recover the capsules, which were revealed to contain morphine. *Id.* The capsules and recovered morphine were the chief evidence used against him at trial. *Id.* The Court held that the officers' conduct shocked the conscience because it involved "[i]llegally breaking into the privacy of the petitioner, the struggle to open his

20

mouth and remove what was there, [and] the forcible extraction of his stomach's contents." *Id.* at 172. Rather than holding that this conduct set the bar for egregious, conscience-shocking conduct, however, we have held that the Supreme Court's citation in *Lopez-Mendoza* to *Rochin* does not "indicat[e] that the Court requires equally flagrant violations before it is willing to label them 'egregious.'" *Cotzojay*, 725 F.3d at 181.

As for our own precedents, we have assessed the egregiousness of alleged pre-hearing violations on several occasions. *See, e.g.*, *Cotzojay*, 725 F.3d 172; *Zuniga-Perez v. Sessions*, 897 F.3d 114 (2d Cir. 2018); *Almeida-Amaral v. Gonzales*, 461 F.3d 231 (2d Cir. 2006). Like *Lopez-Mendoza*, these cases considered a petitioner's motion to suppress evidence gathered pursuant to a purportedly illegal arrest. In *Almeida-Amaral*, we identified "two principles that . . . bear on whether [a] petitioner suffered an egregious violation of his constitutional rights." 461 F.3d at 235. First, we consider the characteristics, severity, and validity of the conduct. *See id.* Second, even if the conduct is "not especially severe, it may nevertheless qualify as an egregious violation if the stop was based on race (or some other grossly improper consideration)." *Id.* As for the standard itself, the "test for egregiousness is *more* demanding than the test for

21

overcoming qualified immunity." *Maldonado v. Holder*, 763 F.3d 155, 159 (2d Cir. 2014) (citing *Cotzojay*, 725 F.3d at 183 n.10). Egregious abuse "entails a shock to the conscience [] and is rarely satisfied." *Id*.

Several years after *Rajah*, we again considered the impact of pre-hearing violations on termination of removal proceedings in *Maldonado v. Holder*, 763 F.3d at 163-64. The petitioners in *Maldonado* moved to terminate their removal proceedings because evidence of their removability was collected during a purportedly race-based stop. *Id*. at 158-62. They also alleged that they were deprived of counsel during processing, in violation of agency regulations. *Id*. at 163-64. Applying the *Rajah* framework, we held that the challenged conduct was not egregious because the stop had been targeted, without consideration of race, towards anybody participating in day labor, and because none of the petitioners claimed they had invoked their right to counsel and then had it denied. *Id*. at 161, 163-64. Accordingly, we denied the petitions for review. *Id*. at 167.

B.    *Application*

As the IJ did below, we construe the facts in Medley's favor and assume that all of his allegations regarding the arrest and interrogation are true.

22

*See* S. App'x at 35 ("[T]he court takes every allegation that the respondent makes in his affidavit to be completely true and disregards the Form I-213."); *see Rajah*, 544 F.3d at 443 ("[W]e assume for purposes of argument that [petitioners'] rights under the regulations were violated.").

As noted above, Medley does not challenge any evidence that was collected during his arrest and interrogation, nor does he contest that he is removable. A.R. 2060. Therefore, the second remedy for addressing pre-hearing violations -- namely, the suppression of evidence during the removal proceeding -- does not apply. *Rajah*, 544 F.3d at 446. We identify the violative conduct alleged in this case, and assuming his allegations to be true, we then consider whether the allegations would entitle Medley to the termination of his removal proceedings, either with or without prejudice.

### 1. The Violative Conduct

Several transgressions are alleged to have transpired. Medley contends that the ICE agents violated agency regulations during the arrest by using unnecessary force in violation of 8 C.F.R. §§ 287.8(a)(1)(ii)-(iii). *See* Pet. Br. at 2, 17-28; Pet. Reply Br. at 16-18. At the ICE facility, the regulatory violations continued when the ICE officers refused to call Medley's attorney. The officers

also deprived Medley of food, water, and medical care as a means of coercing him to make statements or sign documents, which he refused to do. Medley argues that this conduct violated agency regulations protecting his right to counsel, 8 C.F.R. § 292.5(b), and his right to remain free from coercion, *id.* § 287.8(c)(2)(vii). *See* Pet. Br. at 2, 30-33.[4]

Medley also argues that the officers' conduct violated his fundamental rights. *See* Pet. Br. at 28-29. He contends that the agency regulations protecting the right to remain free from coercion and the right to counsel were promulgated to protect petitioners' Fifth Amendment due process rights. *Id.* at 29.

We turn to whether the alleged violations warrant termination, with or without prejudice.

---

[4] Medley alleged additional regulatory violations before the immigration court, including the failure of the ICE officers to obtain an arrest warrant in violation of 8 C.F.R. § 287.8(c)(2)(ii); the failure of officers to identify themselves during the arrest in violation of 8 C.F.R. § 287.8(c)(2)(iii); the officers' choice to leave Medley unattended in the vehicle in violation of 8 C.F.R. § 287.8(d)(1); and examination by an arresting officer in violation of 8 C.F.R. § 287.3(a). *See* S. App'x at 35. Because these claims were not raised on appeal to the BIA, we deem them waived. *See Lin Zhong v. U.S. Dep't of Just.*, 480 F.3d 104, 123 (2d Cir. 2007); *Cervantes-Ascencio v. U.S. I.N.S.*, 326 F.3d 83, 87 (2d Cir. 2003) (per curiam). Moreover, even assuming they were not waived, for the reasons discussed below, they do not constitute a basis for termination -- with or without prejudice.

## 2. *Termination With Prejudice*

As in *Rajah*, we assume without deciding that an egregious pre-hearing violation could warrant termination with prejudice of Medley's removal proceedings. Because we do not find that the challenged conduct was "so egregious as to shock the conscience," Medley is not entitled to such a remedy, on the assumption that it exists. *Rajah*, 544 F.3d at 446. The alleged improprieties here are, for the most part, similar to the challenged conduct in *Rajah*, where we held that the purported regulatory violations were not egregious and did not merit termination with prejudice. *Id.* at 443. Though Medley, unlike the *Rajah* petitioners, also alleges that the officers' physical conduct warrants termination, we cannot say that the challenged conduct is egregious or shocks the conscience.

We have no allegation here that Medley's arrest and interrogation were based on impermissible considerations such as race, which could give rise to an egregious violation. *See, e.g.*, *Almeida-Amaral*, 461 F.3d at 235. Instead, we assess the "characteristics and severity of the offending conduct." *Id.* Here, the purported violations largely resemble those in *Rajah* and *Alnahham*, where we held that termination with prejudice was not warranted because the violations neither shocked the conscience nor violated fundamental rights. *See Rajah*, 544

25

F.3d at 446; *Alnahham*, 371 F. App'x at 195-96.  In *Rajah*, we assumed that the following violations occurred: (1) at least some of the petitioners had been arrested without a warrant, in violation of 8 C.F.R. § 287.8(c)(2)(ii), (2) at least some of the petitioners were not notified of their arrest until after substantial questioning had occurred, in violation of 8 C.F.R. § 287.8(c)(2)(iii), (3) the petitioners were examined by arresting officers, in violation of 8 C.F.R. § 287.3(a), and (4) a seven-hour interrogation of a petitioner, interrupted by two intervening stints where he was placed in a cell, amounted to coercion, in violation of 8 C.F.R. § 287.8(c)(2)(vii).  *Rajah*, 544 F.3d at 443-46.[5]  The petitioner in *Alnahham* alleged the same four violations.  *Alnahham*, 371 F. App'x at 195.  He also alleged that he was held at 26 Federal Plaza for more than 24 hours and that that ICE interfered with his right to counsel.  *Id.* at 195.  The court, however, found that his right to counsel was not violated, as Alnahham had not clearly invoked his right.  *Id.*

---

[5]	The petitioners also alleged that their attorneys' inability to access the interrogation room violated their right to counsel.  *Rajah*, 544 F.3d at 444-45.  Because we noted that the petitioners had not brought their attorneys to these scheduled interviews, we rejected the contention that such actions constituted a regulatory violation.  *Id*.

In *Rajah*, the Court rejected the claim that ICE employed coercive tactics because the interrogations "did not involve the kind of circumstances that prior courts have found coercive, such as marathon questioning or misinformation as to their rights." *Id*. at 445. As for the fourth petitioner who was questioned for seven hours, we noted that the IJ found the duration was coercive, but we declined to find that the interrogation was egregious conduct such that it provided a basis for termination, explaining that "the interrogation, . . . while undoubtedly unpleasant, did not rise beyond the level of being long and tiresome." *Id*. at 446.

The tactics used by ICE during Medley's interrogation similarly do not amount to unlawful coercion. Although Medley contends that the officers attempted to coerce him to sign certain documents by threatening to continue withholding food, water, and medical treatment and refusing to call his attorney, he was not subject to "marathon questioning" and was not misinformed about his rights. *Rajah*, 544 F.3d at 445.[6] Instead, the ICE officers initially provided Medley

---

[6]     Medley does not specify how long the interrogation lasted. *See* S. App'x at 41-42. Per the Form I-213, Medley was arrested on December 20, 2017, at 11:45am, arrived to the ICE facility at 11:55am, made a telephone call to his wife at 1:15pm, and was provided with a meal at 1:30pm. A.R. 1867-68. If this timeline is correct, it supports Respondent's contention that the interrogation lasted approximately one hour. *See* Resp. Br. at 40.

with a list of pro bono immigration attorneys and stopped questioning Medley as soon as his lawyer sent a message invoking his rights, although the officers, according to Medley's allegations, had previously ignored Medley's own invocation of his rights. *See* S. App'x at 41-42. Medley neither gave involuntary statements nor contests any evidence that was gathered during his interrogation, and he concedes that he received medical attention soon after the interrogation ended.

Nor does the purportedly coercive conduct violate Medley's due process rights under the Fifth Amendment. Due process protections "are available only against egregious conduct which . . . can fairly be viewed as so brutal and offensive to human dignity as to shock the conscience." *Smith ex rel. Smith v. Half Hollow Hills Cent. School Dist.*, 298 F.3d 168, 173 (2d Cir. 2002) (per curiam) (internal quotation marks and citation omitted). The officers' tactics, as alleged by Medley, cannot be characterized as so offensive or brutal to amount to egregiousness, given the comparatively short length of the interrogation, the brevity of the threats of withholding food, water, and medical treatment, and the low level of his need for medical treatment. While Medley does allege he was bleeding as he was being questioned, the only medical treatment that he required

after the interrogation was a re-dressing of his wound, which indicates that the threat to withhold medical treatment did not have significant coercive impact. Medley's affidavit does not specify the seriousness of his bleeding, and we will not infer gravity that the petitioner has failed to allege. Based on all of the above, we conclude that the abusive conduct alleged by Medley was not so egregious as to justify termination.

Medley also asserts that the ICE officials violated 8 C.F.R. § 292.5(b), which provides the right to counsel during "examination[s]." While Medley is correct that an officer's ignoring a noncitizen's request for an attorney is a significant violation of rights, that violation (if it occurred) had no adverse consequences for him. It is not as if the officers secured evidence to be used against him by failing to honor his right to counsel. Despite any violation that occurred, Medley acknowledged that he held fast, refusing to answer questions or sign documents. Even if the violation alleged was sufficiently egregious to justify suppression of evidence obtained through the violation (of which there was none), it would not justify termination of the proceeding seeking his removal. *See Lopez-Mendoza*, 468 U.S. at 1050-51 & n.5 (explaining that suppression of evidence may be available as a remedy for "egregious violations"

of the Fourth Amendment, citing *Matter of Garcia*, 17 I. & N. Dec. 319, 321 (BIA 1980), in which evidence of alienage obtained after petitioner's right to counsel was invoked was suppressed).

In *Rajah*, we assumed without deciding that egregious pre-hearing regulatory violations would be grounds for termination, but we concluded that none of the alleged violations were egregious, in part because they were "harmless." *Rajah*, 544 F.3d at 446. Here, as in *Rajah*, we need not concern ourselves with whether and in what circumstances egregious conduct will justify termination of the proceedings because the denial of counsel alleged by Medley was brief and harmless.

We next address Medley's contention that the circumstances of his arrest violated agency regulations prohibiting the use of unnecessary non-deadly force under 8 C.F.R. §§ 287.8(a)(1)(ii)-(iii). We assume without deciding that the use of excessive force, if egregious, can be the basis for terminating proceedings with prejudice. It may well be that the arresting officers treated Medley more roughly than was appropriate. While arresting him, according to his allegations, the officers pushed Medley against a shelving unit, threw away the medication he was given after his surgery, and threw his "Know Your Rights" card to the

30

ground. *See* Pet. Br. at 7-9. The officers grabbed his bandaged hand while handcuffing him and caused it to bleed. *See id*. at 7. They also ignored his entreaties to be taken to the hospital and later disregarded his requests for food and water at the ICE facility. *See id*.

Despite such roughness, we are unable to say that the ICE officials' conduct so deviates from the routine rough and tumble of an arrest -- particularly of someone with an extensive history of arrest and who has been charged with resisting arrest on six prior occasions -- such that it warrants termination with prejudice. *See, e.g., Landy v. Irizarry*, 884 F. Supp. 788, 797 (S.D.N.Y. 1995) ("[T]he right to make an arrest necessarily allows the use of some degree of force to effect it . . . ."); *Pooler v. Hempstead Police Dep't.*, 897 F. Supp. 2d 12, 25 (E.D.N.Y. 2012) ("Physical force is often necessary when effectuating arrests . . . and, thus, not every push or shove is unconstitutionally excessive . . . ." (internal quotation marks and citation omitted)); *Rodriguez v. Village of Ossining*, 918 F. Supp. 2d 230, 238 (S.D.N.Y. 2013) (observing that arresting officers are "authorized to use some degree of force or the threat thereof to effect [an] arrest" (internal quotation marks and citation omitted)); *see also Brown v. City of New York*, 798 F.3d 94, 103 (2d Cir. 2015) (noting that "[p]olice

31

officers must be entitled to make a reasonable selection among alternative techniques for making an arrest").  The Form I-213 report, which recorded the details of the arrest, indicated that Medley had been arrested seven times in three years for assault, disorderly conduct, and other crimes.  A.R. 1865-66.  It also noted that ICE had issued five detainers for Medley prior to his arrest and that they had not been honored by New York authorities.  *Id*. at 1867.  Therefore, a degree of roughness in arresting Medley was not unreasonable given the officers' knowledge of this criminal history.  *See* 8 C.F.R. § 287.8(a)(1)(iii) (providing that immigration officers "shall escalate to a higher level of non-deadly force [during an arrest] only when such higher level of force is warranted by the . . . apparent capabilities of the suspect"); *Graham v. Connor*, 490 U.S. 386, 396 (1989) (holding that the reasonableness of force deployed during an arrest is judged using the "facts and circumstances of each particular case" from the perspective of "a reasonable officer on the scene"); *Sullivan v. Gagnier*, 225 F.3d 161, 166 (2d Cir. 2000) (per curiam) ("The force used by the officer must be reasonably related to the nature of the resistance and the force . . . reasonably perceived to be threatened[] against the officer.").

Minor injuries in the process of an arrest do not necessarily justify an excessive force claim, let alone shock the conscience. *See, e.g.*, *Lennon v. Miller*, 66 F.3d 416, 426 (2d Cir. 1995) (rejecting an excessive force claim where the police forcibly removed the plaintiff from a car, injuring her wrist in the process, noting that it was necessary to do so to execute the arrest). We have "long rejected the principle that handcuffing is 'per se reasonable'" and have previously held that excessive force during handcuffing can, in some instances, give rise to a fundamental rights violation. *Cugini v. City of New York*, 941 F.3d 604, 615 (2d Cir. 2019) (quoting *Soares v. State of Conn.*, 8 F.3d 917, 921 (2d Cir. 1993)). In this instance, however, although the arresting officers may have deployed a degree of force that was greater than appropriate, we have no basis to conclude that any abuse was egregious or conscience-shocking.

Finally, Medley argues that a totality of the circumstances analysis requires a finding that the challenged conduct shocks the conscience. *See* Pet. Br. at 25-26. In support of this assertion, Medley points to *Rochin*, the case involving forcible stomach pumping, and contends that the challenged conduct during his arrest and interrogation is "similarly severe[,] . . . if not more egregious." *Id.* at 26. We are unpersuaded. Though we have held that *Rochin* does not set the bar

33

for egregious conduct, *see Cotzojay*, 725 F.3d at 181, the ICE officers' use of limited force and interrogation tactics does not compare with the conscience-shocking and intrusive conduct in *Rochin*. The ICE officers arrested Medley pursuant to a DHS arrest warrant and the amount of force that they allegedly used, even if more than appropriate, was not shocking or egregious. At the ICE facility, the officers employed interrogation tactics that do not amount to unlawful coercion. If, as Medley alleges, the officers threw away Medley's pain medication following a minor surgery, this may offend notions of decency but does not amount to an "unnecessary and wanton infliction of pain" or a "deliberate indifference to serious medical needs" that is "repugnant to the conscience of mankind." *Estelle v. Gamble*, 429 U.S. 97, 103-04, 106 (1976) (internal quotation marks and citations omitted). The officers' conduct here was not so extreme, brutal, and "offensive to human dignity" such that it shocks the conscience. *Mara*, 921 F.3d at 79. Moreover, Medley does not contend that the officers lacked sufficient legal grounds for the arrest or that they did so pursuant to impermissible considerations. *See* Pet. Br. at 21.

Therefore, we conclude that termination of Medley's removal proceedings with prejudice is not warranted because the challenged conduct was

not conscience-shocking or egregious, which is, by definition, "extreme, rare, and obvious." *Maldonado*, 763 F.3d at 165.

### 3. *Termination Without Prejudice*

We have concluded that the violations were not egregious or conscience-shocking. There still may be a basis for termination, without prejudice to renewal, but only if the pre-hearing violations resulted in prejudice to the outcome of the proceedings. *Rajah*, 544 F.3d at 447.

Here, however, given the absence of prejudice to the outcome of the proceedings, we hold that termination of Medley's removal proceedings without prejudice to renewal is not warranted. There was substantial evidence establishing Medley's removability independent of his arrest. *See* S. App'x at 26. DHS presented to the IJ copies of Medley's passport, visa, and database entries that confirmed his date of entry. All three records make clear that Medley was authorized to remain in the country until December 6, 2006, and that he stayed in the country well beyond that date. The arrest warrant issued by DHS was based on "biometric confirmation of the subject's identity and a records check of federal databases that affirmatively indicate, by themselves or in addition to other reliable information, that the subject either lacks immigration status or

35

notwithstanding such status is removable under U.S. immigration law."  A.R. at 1862.  Medley's passport, visa, and database entries confirming his nationality and immigration status constitute "clear, unequivocal, and convincing evidence" of his visa overstay.  *Zerrei*, 471 F.3d at 346-47 (finding that a noncitizen's passport, independent of any evidence from INS databases, was convincing evidence of alienage and overstay).  The pre-hearing violations alleged here do not change the fact that Medley is removable.

Moreover, Medley does not -- and could not -- contend that the challenged conduct prejudiced the outcome of proceedings or that evidence of his status collected pursuant to his arrest should be suppressed.  In counseled pleadings during his removal proceedings, he conceded his removability.  A.R. at 2060.  The Supreme Court has suggested that regardless of how an arrest transpires, "the removal of an individual could still be supported by otherwise admissible 'evidence *not derived directly* from,' but rather '*gathered independently* of, or *sufficiently attenuated* from,' the arrest."  *Vanegas-Ramirez*, 768 F.3d at 234 (quoting *Lopez Mendoza*, 468 U.S. at 1043).  Here, Medley's concession occurred more than three months after the arrest, which is "sufficiently attenuated from" the arrest.  *Id*. (emphasis omitted).  Both the concession and DHS's evidence

independently confirm Medley's status as a removable noncitizen.  Thus, had Medley made an evidentiary challenge, he would have had no grounds on which to challenge the violations on the basis that they were prejudicial.

## *CONCLUSION*

Under *Rajah*, termination may be warranted for pre-hearing regulatory violations in cases involving "prejudice that may have affected the outcome of the proceeding, conscience-shocking conduct, or a deprivation of fundamental rights."  544 F.3d at 447.  As Medley has failed to show that he satisfies any of the three requirements for termination, he is not entitled to termination of his removal proceedings, with or without prejudice to renewal. Because the immigration court did not abuse its discretion in denying the motions to terminate, the petition for review is DENIED.