19-3124-ag
Pinel-Gomez v. Garland

### In the
# United States Court of Appeals
## For the Second Circuit

August Term, 2021
No. 19-3124-ag

MAURICIO DAGOBERTO PINEL-GOMEZ, J. L. P-E.,
*Petitioners*,

*v.*

MERRICK B. GARLAND, UNITED STATES ATTORNEY GENERAL,
*Respondent.*

On Petition for Review of a Final Order of
Removal of the Board of Immigration Appeals

ARGUED: MAY 18, 2022
DECIDED: NOVEMBER 2, 2022

Before: KEARSE, JACOBS, and NARDINI, *Circuit Judges*.

An immigration judge ("IJ") (Aviva L. Poczter, *Immigration Judge*) denied Petitioner Mauricio Dagoberto Pinel-Gomez's application for asylum, withholding of removal, and protection under

the Convention Against Torture based on Pinel-Gomez's failure to adequately corroborate his claim with documentary evidence. The Board of Immigration Appeals ("BIA") affirmed. Petitioners argue that the BIA was unduly deferential to the IJ's determination that corroboration was required. We hold that the BIA reviews *de novo* an IJ's determination under 8 U.S.C. § 1158(b)(1)(B)(ii) that an applicant should provide additional evidence that corroborates otherwise credible testimony, because that is not a finding of fact. In contrast, the BIA reviews for clear error an IJ's finding as to whether an applicant does not have and cannot reasonably obtain such corroborating evidence because that is a finding of fact. Because the BIA properly applied these standards of review here, we DENY the petition for review.

---

HAROLD A. SOLIS, Make the Road New York, Brooklyn, NY, *for Petitioners*.

JOHN F. STANTON (Jessica E. Burns, *on the brief*), Office of Immigration Litigation, Civil Division, U.S. Department of Justice, Washington, D.C. (Ethan P. Davis, Acting Assistant Attorney General, Civil Division, Washington, D.C., *on the brief*), *for* Merrick B. Garland, United States Attorney General, *for Respondent*.

WILLIAM J. NARDINI, *Circuit Judge*:

An applicant seeking asylum carries the burden of establishing his eligibility for relief. In some instances, an immigration judge ("IJ")

2

may determine that an applicant's credible testimony, standing alone, is enough to meet that burden. In others, an IJ may determine that an applicant must provide corroborating evidence because the applicant's testimony, although credible, is not sufficient on its own. Once an IJ decides that such corroborating evidence is necessary, the applicant must provide it unless he "does not have the evidence and cannot reasonably obtain the evidence." 8 U.S.C. § 1158(b)(1)(B)(ii). The case before us concerns the standards that the Board of Immigration Appeals ("BIA") must apply when reviewing the IJ's determinations on these issues.

The Department of Justice has promulgated regulations that govern the BIA's jurisdiction over IJ decisions in removal and asylum proceedings. 8 C.F.R. § 1003.1(b)(3), (9). The regulations provide that the BIA must review an IJ's findings of fact, including credibility determinations, for clear error. 8 C.F.R. § 1003.1(d)(3)(i). By contrast, the BIA reviews *de novo* all other issues in appeals from IJ decisions,

3

including questions of law, discretion, and judgment. *Id.* § 1003.1(d)(3)(ii).

An IJ first determines whether corroborating evidence is needed; and if corroboration is required and is not produced, the IJ determines whether corroborating evidence was possessed by or reasonably available to the applicant. We have not previously decided which standard the BIA is to apply to which determination. We conclude that the IJ's initial determination—that an applicant "should provide" corroborating evidence, 8 U.S.C. § 1158(b)(1)(B)(ii)—is not a factual finding. We therefore hold that the BIA reviews that determination *de novo.* The IJ's subsequent determination as to whether an applicant "does not have the evidence and cannot reasonably obtain the evidence," *id.*—*i.e.*, as to the existence of circumstances that Section 1158 provides will excuse him from providing corroboration—is a factual finding that the BIA reviews only for clear error.

Because we conclude that the BIA here properly applied these standards of review, we DENY the petition for review.

## I.     Background

Mauricio Dagoberto Pinel-Gomez and his minor son, J. L. P-E. (together, "Petitioners"), are natives and citizens of Honduras.  They left Honduras in April 2016 and entered the United States without inspection that May.  The United States Department of Homeland Security ("DHS") charged Petitioners as subject to removal under section 212(a)(6)(A)(i) of the Immigration and Nationality Act ("INA").  8 U.S.C. § 1182(a)(6)(A)(i).  Pinel-Gomez conceded that he was removable but applied for asylum under section 208A of the INA, 8 U.S.C. § 1158, withholding of removal under section 241(b)(3) of the INA, 8 U.S.C. § 1231(b)(3), and withholding of removal under the Convention Against Torture ("CAT"), U.N. Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, Dec. 10, 1984, G.A. Res. 39/46, 39 U.N. GAOR Supp. No.

5

51, at 197, U.N. Dec. A/39/51, 1465 U.N.T.S 85. He named his son as a derivative beneficiary.[1]

Pinel-Gomez sought relief on two theories: First, he alleged that he experienced past persecution in Honduras on account of his political opinion—that the Mara 18 gang threatened to kill him and his son for his refusal to pay the "tax" they demanded of residents who lived in Pinel-Gomez's hometown, Santa Elena. According to Pinel-Gomez, his refusal to pay the tax was a direct challenge to the gang's authority, as he expressed to a Mara 18 member that Santa Elena did not belong to the gang and that the gang had no right to his money, which he earned working in lemon fields and used to support his family. Second, he feared that if he returned to Honduras he

---

[1] In addition to his derivative claims for relief, J. L. P-E. also conceded removability and asserted independent claims for asylum, withholding of removal, and CAT relief based on his membership in a particular social group—children of Mauricio Pinel-Gomez. The IJ denied these claims and the BIA affirmed, concluding that the son's claim was based on the same factual basis, and failed for the same lack of corroborating documents, as his father's claim. We agree that both petitioners' claims rise and fall on Pinel-Gomez's failure to supply corroborating evidence. Accordingly, we focus on Pinel-Gomez's claims, which are also dispositive with respect to his son.

would experience future persecution at the hands of Mara 18 on account of his membership in a particular social group—Hondurans who have reported gang activity to law enforcement. Pinel-Gomez claimed that Mara 18 continued to threaten him on the streets of Santa Elena on his way to or from work and, eventually, sent threatening notes to his home. Not only would Mara 18 kill him and his son if he did not pay the tax, but the gang would kill them if he reported their threats to the Honduran authorities. Pinel-Gomez claimed that, on March 30, 2016, he reported Mara 18's threats to the justice of the peace of criminal matters in Choluteca, Honduras. He later feared that Mara 18 found out about his report, and that the gang would kill him and his son if they were to return to Honduras.

Pinel-Gomez submitted three documents to corroborate his claim for relief. First, he provided a copy of a record dated May 30, 2016, and signed by the secretary of the justice of the peace in Choluteca, verifying the existence of a complaint filed by Pinel-

Gomez in March 2016 about Mara 18's threats. Second, he submitted a letter from his friend stating that Pinel-Gomez fled Honduras because of threats he received from Mara 18 for his refusal to pay the "war tax"; that upon Pinel-Gomez's departure from Honduras, Mara 18 destroyed his home during their search for him; and that the friend was hospitalized after he was beaten by Mara 18 members looking for information on Pinel-Gomez's whereabouts. Lastly, he submitted evidence summarizing the conditions in Honduras.

At a February 12, 2018, hearing, IJ Aviva L. Poczter denied Petitioners' applications for asylum, withholding of removal, and CAT relief. The IJ's oral decision found Pinel-Gomez credible "in the sense that his testimony was internally consistent." But the IJ determined that his testimony was "inconsistent with one of only two pieces of personalized corroborating evidence directly relating to [his] claim"—that is, the record of Pinel-Gomez's March 2016 complaint of threats by Mara 18. Pinel-Gomez, the IJ said, was unable to explain

8

why the report signed by the justice of the peace was dated May 30 when Pinel-Gomez had testified to receiving it on March 30. The IJ also gave no weight to the letter from Pinel-Gomez's friend, as it did not specify where Pinel-Gomez and the friend lived and was unaccompanied by any documentation of the friend's identity. Finally, the IJ concluded that although Pinel-Gomez had argued that he lacked the opportunity to get necessary supporting documents, such as proof of his address and verification of his friend's identity, his explanations did "not mean that the document[s were] not reasonably available had [they] been properly requested from local authorities." CAR 119.

Petitioners submitted a timely appeal to the BIA. On September 18, 2019, the BIA dismissed Petitioners' appeal. *See Matter of Mauricio Dagoberto Pinel-Gomez, J. L. P-E.*, Nos. A208 991 867/866 (B.I.A. Sept. 18, 2019), *aff'g* Nos. A208 991 867/866 (Immigr. Ct. N.Y.C. Feb. 12, 2018). The BIA affirmed the IJ's determination that

9

Petitioners did not meet their burden of proof for asylum, withholding of removal, or CAT protection given Pinel-Gomez's failure to provide documentary evidence to corroborate his otherwise credible testimony. This issue was dispositive of Petitioners' claims.

Pinel-Gomez and his son now petition for review of the agency's denial of their claims for relief.

## II.    Discussion

Petitioners raise only one argument on appeal: that the BIA applied an unduly deferential standard of review to the IJ's determinations that corroborating evidence was required and that such evidence was reasonably obtainable. We review questions of law *de novo*, including whether the BIA applied the correct standard in its review of an IJ decision. *See Alvarado-Carillo v. INS*, 251 F.3d 44, 49 (2d Cir. 2001) ("[W]hen the situation presented is the BIA's application of legal principles to undisputed facts, rather than its underlying determination of those facts or its interpretation of its

10

governing statutes, our review of the BIA's asylum and withholding of deportation determinations is *de novo*." (internal quotation marks omitted)).

## A. Statutory and regulatory framework

Pinel-Gomez bears the burden of proving his eligibility for asylum, 8 U.S.C. § 1158(b)(1)(B), statutory withholding of removal, 8 U.S.C. § 1231(b)(3)(C), and CAT protection, 8 C.F.R. § 1208.16(c)(2). "Asylum and withholding of removal are two alternative forms of relief" under the INA that are both "available to an alien claiming that he will be persecuted, if removed back to his native country." *Wei Sun v. Sessions*, 883 F.3d 23, 27 (2d Cir. 2018). There are, however, salient differences between the two. *Liang v. Garland*, 10 F.4th 106, 112 (2d Cir. 2021). Significantly, "while withholding of removal is automatically granted to all eligible applicants, the choice of whether to grant asylum is ultimately left to the discretion of the Attorney General." *Id*.

11

To qualify for asylum, an applicant must show that he is a "refugee"—that is, he "is unable or unwilling to return to [his home country] because of [past] persecution or a well-founded fear of [future] persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. §§ 1101(a)(42)(A), 1158(b)(1)(B)(i). To establish a "well-founded fear," an applicant must demonstrate "a subjective fear of future persecution that is objectively reasonable." *Liang*, 10 F.4th at 112. Where an alien shows that he has endured past persecution, "a well-founded fear of future persecution is presumed, and it becomes the government's burden to rebut that presumption." *Id.*

To qualify for withholding of removal, an applicant must show a "clear probability of persecution, *i.e.*, [that] it is more likely than not that the alien would be subject to persecution." *Wei Sun*, 883 F.3d at 27 (internal quotation marks omitted). Because the "clear probability" standard for statutory withholding of removal is more

demanding than the "well-founded fear" standard for asylum, "an applicant who fails to establish eligibility for asylum fails to establish eligibility for withholding of removal." *Id.* at 28.

Finally, to qualify for CAT relief, an applicant must show "that it is more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 1208.16(c)(2). A "CAT claim may be established using different evidence and theories than the alien's claims under the INA." *Paul v. Gonzales*, 444 F.3d 148, 155 (2d Cir. 2006). But where an applicant's CAT claim and claims under the INA are all based on the same evidence and theories, "a petition for CAT relief may fail because of an adverse credibility ruling rendered in the asylum" or statutory withholding of removal context. *Id.* at 157.

An applicant's credible testimony, standing alone, may be sufficient to establish a claim for asylum, "but only if [he] satisfies the trier of fact that [his] testimony is credible, is persuasive, and refers to

specific facts sufficient to demonstrate that the applicant is a refugee."

8 U.S.C. § 1158(b)(1)(B)(ii). In some cases, an applicant must provide

corroborating evidence because the applicant's testimony, although

credible, is not sufficient on its own.

The decision of whether to require corroborating evidence is

made in the first instance by the IJ. Under 8 U.S.C. § 1158(b)(1)(B)(ii),

"[w]here the trier of fact determines that the applicant should provide

evidence that corroborates otherwise credible testimony, such

evidence must be provided unless the applicant does not have the

evidence and cannot reasonably obtain the evidence."[2] An IJ may

deny a claim for relief based on the applicant's failure to provide

---

[2] The standards under § 11158(b)(1)(B)(ii) for asylum claims also apply for withholding of removal under section 241 of the INA, 8 U.S.C. § 1231. 8 U.S.C. § 1231(b)(3)(C) ("[T]he trier of fact that shall determine whether the alien has sustained the alien's burden of proof, and shall make credibility determinations, in the manner described in clauses (ii) and (iii) of section 1158(b)(1)(B) of this title."). The standard for CAT claims is set out in regulations issued by the Attorney General pursuant to section 2242 of the Foreign Affairs Reform and Restructuring Act of 1998. Pub. L. No. 105–277, Div. G, Title XII, § 2242, 112 Stat. 2681–822, 8 U.S.C. § 1231 note (2000); *see also* Regulations Concerning the Convention Against Torture, 64 Fed. Reg. 8478 (1999); 8 C.F.R. § 1208.16(c) ("Eligibility for withholding of removal under the Convention Against Torture.").

14

reasonably obtainable corroborating evidence. In doing so, the IJ must "(1) point to specific pieces of missing evidence and show that it was reasonably available, (2) give the applicant an opportunity to explain the omission, and (3) assess any explanation given." *Wei Sun*, 883 F.3d at 31.

## B. BIA review of an IJ's determination that corroboration is required

When an IJ rejects an applicant's claims based on a lack of corroboration, that decision has two components. First, the IJ determines that an applicant "should provide evidence that corroborates otherwise credible testimony." 8 U.S.C. § 1158(b)(1)(B)(ii). Second, once the IJ determines that corroborating evidence is necessary, the IJ must determine whether it is in the applicant's possession or the applicant could reasonably obtain it. *Id.* We address the standard of review that the BIA must apply to each of these two determinations in turn.

### 1. IJ determination that corroborating evidence is required

The parties agree, as do we, that the BIA reviews *de novo* the threshold determination that corroborating evidence is required. An IJ who finds an applicant's testimony credible may still decide that the testimony falls short of satisfying the applicant's burden of proof, either because it is unpersuasive or because it did not include "specific facts sufficient to demonstrate that the applicant is a refugee." *See* 8 U.S.C. § 1158(b)(1)(B)(ii) (permitting an IJ to require evidence to corroborate "otherwise credible testimony"). The petitioner argues that the decision to require corroborating evidence is a legal determination about whether the applicant's credible testimony is sufficient to meet his burden to establish eligibility for relief. Petitioners' Br. at 22; *see Alom v. Whitaker*, 910 F.3d 708, 712 (2d Cir. 2018) ("When determining whether established facts are sufficient to meet a legal standard, the BIA has an obligation to conduct an independent evaluation of the evidence in the record

under a de novo standard of review.").  The Government contends that the decision to require additional corroborative evidence is an exercise of the IJ's discretion.

The BIA reviews all decisions of an IJ *de novo* except the IJ's findings of fact, *see* 8 C.F.R. § 1003.1(d)(3)(i)–(ii), and we are satisfied that the decision to require corroborating evidence is not a factual finding. We therefore need not decide whether the IJ's decision to require corroboration is a legal or discretionary determination because the BIA must review that decision *de novo* in either case.  To be sure, an IJ may need to make factual determinations to conclude that an applicant has not carried his burden even given his credible testimony.  And although the BIA may not set aside an IJ's assessment of an applicant's credibility absent clear error, 8 C.F.R. § 1003.1(d)(3)(i), the ultimate decision on whether a particular applicant must provide corroborating evidence is not a purely factual inquiry.  *Cf. Alom*, 910 F.3d at 712 ("Where the [BIA] reviews a mixed

17

question of law and fact, the [BIA] will defer to the factual findings of the immigration judge unless clearly erroneous, but the [BIA] retain their independent judgment and discretion . . . regarding the review of pure questions of law and the application of the standard of law to those facts." (internal quotation marks and alterations omitted)). We therefore hold that the IJ's decision to require corroborating evidence to support otherwise credible testimony is subject to *de novo* review by the BIA.

### 2. IJ determination that corroborating evidence is in the applicant's possession or reasonably obtainable

Second, once an IJ has decided that corroborating evidence is needed, the applicant must provide it unless he "does not have the evidence and cannot reasonably obtain" it. 8 U.S.C. § 1158(b)(1)(B)(ii). The parties disagree on the standard that the BIA must apply when reviewing an IJ's decision about whether corroborating evidence is reasonably obtainable.

Petitioners assert that *de novo* review applies because "an IJ's

corroboration analysis raises a mixed question of fact (whether the IJ is correct that certain evidence was available) and law (whether it would be reasonable to expect an applicant to obtain that missing evidence)." Petitioners' Br. at 16. The Government contends that the deferential clear error standard applies because an IJ's determination about whether an applicant possesses or can reasonably obtain certain corroborating evidence is a factual issue.[3]

As Petitioners concede, the initial determinations an IJ must

---

[3] To support its view, the Government relies on the language of 8 U.S.C. § 1252(b)(4). *See* Gov't Br. at 24. That section provides that a court may not "reverse a determination made by a trier of fact with respect to the availability of corroborating evidence." 8 U.S.C. § 1252(b)(4). Because a "trier of fact" determines whether corroborating evidence is available, the Government contends, such a determination must be a purely factual question. Although we agree that the reasonable obtainability of corroborating evidence is a question of fact, we decline to adopt the Government's rationale for two reasons. First, Section 1252(b)(4) governs only *judicial* review of agency decisions. *See id.* § 1252(b)(4) ("No *court* shall reverse a determination made by a trier of fact with respect to the availability of corroborating evidence" (emphasis added)). In contrast, the internal agency standards of review that the BIA applies when reviewing decisions of an IJ are established by regulation. *See* 8 C.F.R. § 1003.1. Second, we are not persuaded that all decisions left to a "trier of fact" as that term is used in § 1252 must be factual findings. Indeed, 8 U.S.C. § 1158(b)(1)(B)(ii), which is incorporated by reference into § 1252(b)(4), leaves to the "trier of fact" the question of whether an applicant has met his burden of proof. Such a determination—that certain facts are sufficient to meet a legal standard—is a question of law that the BIA reviews *de novo*. *Alom*, 910 F.3d at 712. Accordingly, we decline to draw the inference from 8 U.S.C. § 1252(b)(4) that the Government urges.

19

make at this step are plainly factual. First, the IJ must determine whether the applicant has corroborating evidence in his possession but has failed to submit it. 8 U.S.C. § 1158(b)(1)(B)(ii). Next, if the applicant does not possess the evidence, the IJ must determine if such evidence is available at all—whether reasonably or not. If a particular type of document is simply not kept in the applicant's home country, then an applicant cannot be required to provide it. These issues present binary, inarguably factual questions subject to review for clear error. Still, Petitioners assert, even if the literal availability of evidence is a factual question, whether an applicant can "reasonably obtain" evidence that is hypothetically available is a question of law. We disagree.

We have emphasized that "[w]hat is 'reasonably available' differs among societies and, given the widely varied and sometimes terrifying circumstances under which refugees flee their homelands, from one asylum seeker to the next." *Jin Shui Qiu v. Ashcroft*, 329 F.3d

20

140, 153 (2d Cir. 2003), *overruled on other grounds by Shi Liang Lin v. U.S. Dep't of Justice*, 494 F.3d 296 (2d Cir. 2007).[4] Thus, reasonableness in the context of the availability of corroborating evidence is a fact-bound, case-specific inquiry. An IJ must make specific findings about an applicant's explanation for the failure to provide corroborating evidence, considering any information about the applicant's country of origin, the circumstances under which the applicant left the country, and the applicant's subjective understanding of whether and how the evidence could be obtained. *See, e.g.*, *Matter of Y-I-M-*, 27 I. & N. Dec. 724, 732 (B.I.A. 2019) ("The applicant was given an opportunity to explain the lack of corroboration, but the Immigration Judge did not find his explanations to be persuasive.").

Because the inquiry arises only when an applicant has not furnished adequate evidence beyond their own testimony, an IJ

---

[4] Although the REAL ID Act is of somewhat recent vintage—enacted in 2005—"the corroboration standard under the REAL ID Act closely tracks our pre-REAL ID Act case law." *Wei Sun*, 883 F.3d at 28. We may thus consider our earlier decisions to evaluate the nature of the IJ's inquiry.

21

generally determines whether additional evidence was reasonably obtainable based primarily on that testimony. Thus, once an IJ determines that corroborating evidence was literally available, her assessment of whether the applicant could reasonably obtain it turns on her assessment of the believability of an applicant's explanation for the failure to provide it. *See Cao He Lin v. U.S. Dep't of Justice*, 428 F.3d 391, 401 (2d Cir. 2005) ("To turn down a refugee candidate for want of sufficient corroboration, the adjudicator must (a) identify the particular pieces of missing, relevant documentation, and (b) show that the documentation at issue was reasonably available to the petitioner. The IJ must also assess the applicant's reasons for not furnishing the corroboration at issue." (internal quotation marks, alteration, and citation omitted)). Credibility is a quintessential factual determination. *See* 8 C.F.R. § 1003.1(d)(3)(i).

We acknowledge that deciding what is "reasonable" may present a question of fact in some legal contexts and a question of law

in others. *Compare First Nat. Bank v. Pipe & Contractors' Supply Co.*, 273 F. 105, 108 (2d Cir. 1921) ("If the contract specifies no time, as in the present case, a reasonable time is implied by law, and what is such reasonable time is a question of law."), *with Sherkate Sahami Khass Rapol (Rapol Const. Co.) v. Henry R. Jahn & Son, Inc.*, 701 F.2d 1049, 1051 (2d Cir. 1983) ("What is a reasonable time is generally a question of fact for the jury." (internal quotation marks and alterations omitted)). *See also United States v. Ekwunoh*, 12 F.3d 368, 370 (2d Cir. 1993) (noting that a district court's sentencing determination about what was "reasonably foreseeable" to a criminal defendant was a factual finding subject to review for clear error). In such cases, the IJ's determination of whether evidence is reasonably obtainable turns entirely on factual issues—in most cases, the IJ's assessment of the applicant's credibility. Accordingly, we hold that an IJ's determination about whether an applicant can "reasonably obtain" corroborating evidence is a finding of fact that the BIA reviews for

clear error.

### C. The BIA's application of the correct standards of review

Finally, we consider whether the BIA in this case properly applied the standards articulated above. We conclude that the BIA did apply the proper standards to the IJ's decision, and that it applied those standards correctly.

With respect to the threshold inquiry—whether the IJ properly concluded that Pinel-Gomez should provide additional corroborating evidence—Petitioners argue that the BIA failed to apply *de novo* review. Petitioners assert that the BIA improperly deferred to the IJ's corroboration analysis, thereby failing to evaluate whether Pinel-Gomez could satisfy his burden absent additional evidence. We disagree.

Petitioners point to nothing in the BIA's decision indicating that the BIA did not apply *de novo* review to the initial question of whether Pinel-Gomez should provide corroborating evidence. The BIA made

clear that it would "review the findings of fact, including the determination of credibility, made by the Immigration Judge under the 'clearly erroneous' standard," and that it would "review all other issues, including issues of law, discretion, or judgment, under the de novo standard." CAR at 3 (quoting 8 C.F.R § 1003.1(d)(3)(i)). The BIA identified the three pieces of evidence that Pinel-Gomez submitted and evaluated whether, given that evidence, he should provide additional corroborating evidence. And where the BIA considered the factual determinations that informed the IJ's conclusions, it was explicit that it was employing a different standard of review.

Next, in considering whether Pinel-Gomez could reasonably obtain corroborating evidence and was therefore required to provide it, the BIA concluded that the IJ "determined, *without clear error*, that the respondent did not provide an adequate explanation as to the availability of the evidence, and therefore, did not corroborate an essential element of his claim." *Id.* at 4 (emphasis added). As

25

Petitioners note, in evaluating the IJ's decision, the BIA erroneously cited the statute governing judicial review. *See* CAR at 4. But the BIA plainly applied the correct standard, even if it cited the wrong statutory section. The erroneous citation does not alter our conclusion that the BIA correctly reviewed for clear error the IJ's finding on the adequacy of Pinel-Gomez's explanation for why he could not reasonably obtain corroborating documents such as records relating to his home ownership, his friend's identity, or Pinel-Gomez's physical presence in Santa Elena. We therefore conclude that the BIA's application of the *de novo* and clear error standards of review, respectively, was proper.

## III.  Conclusion

In sum, we hold as follows:

(1)    The BIA reviews *de novo* an IJ's determination under 8 U.S.C. § 1158(b)(1)(B)(ii) that an applicant should provide additional evidence that corroborates otherwise

credible testimony.

(2)    The BIA must review for clear error an IJ's finding as to whether an applicant does not have and cannot reasonably obtain such corroborating evidence, because that is a finding of fact that determines whether he is excused from producing it.

(3)    The BIA properly applied *de novo* review to the IJ's request for corroborating evidence and properly reviewed for clear error the IJ's finding that Pinel-Gomez failed to produce requested evidence that he could reasonably have obtained.

For the foregoing reasons, we **DENY** the petition for review.