21-6259-ag
*Bujaj v. Garland*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007 IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 2nd day of July, two thousand twenty-four.

PRESENT:
>JOSEPH F. BIANCO,
>BETH ROBINSON,
>SARAH A. L. MERRIAM,
>>*Circuit Judges*.

_____

LEONARD BUJAJ, LILJANA BUJAJ,

>*Petitioners*,

>v.                                                                                21-6259-ag

MERRICK B. GARLAND, UNITED STATES
ATTORNEY GENERAL,

>*Respondent*.

_____

FOR PETITIONERS:                    MICHAEL P. DIRAIMONDO (Marialaina L. Masi and Stacy A. Huber, *on the brief*), DiRaimondo & Masi, PC, Bohemia, New York.

FOR RESPONDENT:                    JONATHAN AARON ROBBINS, Trial Attorney, Office of Immigration Litigation (Craig W. Kuhn, Trial Attorney, Brian Boynton, Principal Deputy Assistant Attorney General, and Zoe J. Heller, Senior Litigation Counsel, Office of

Immigration Litigation, *on the brief*), Civil Division, United States Department of Justice, Washington, District of Columbia.

**UPON DUE CONSIDERATION** of this petition for review of a Board of Immigration Appeals ("BIA") decision, it is hereby **ORDERED, ADJUDGED, AND DECREED** that the petition for review is **DENIED**.

Petitioners Leonard and Liljana Bujaj, natives and citizens of Albania, seek review of a decision of the BIA, affirming the decision of the Immigration Judge ("IJ"), which denied their applications for asylum, withholding of removal, and relief under the United Nations Convention Against Torture ("CAT"). *In re Bujaj*, Nos. A 205-395-407, A 206-227-933 (B.I.A. Apr. 13, 2021), *aff'g* Nos. A 205-395-407, A 206-227-933 (Immigr. Ct. N.Y.C. July 17, 2018). In their applications, Petitioners claimed that they suffered past persecution and had a well-founded fear of future persecution due to Leonard's support for the Christian Democratic Party ("CDP") in Albania. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal, to which we refer only as necessary to explain our decision to deny the petition.

We review the IJ's decision as modified by the BIA. *See Xue Hong Yang v. U.S. Dep't of Just.*, 426 F.3d 520, 522 (2d Cir. 2005). We review the agency's "legal conclusions *de novo*, and its factual findings . . . under the substantial evidence standard." *Y.C. v. Holder*, 741 F.3d 324, 332 (2d Cir. 2013) (internal quotation marks and citation omitted). "[T]he administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).

2

## I. Agency Jurisdiction

Petitioners argue that the agency proceedings should be reopened and terminated for lack of subject-matter jurisdiction because their Notices to Appear ("NTAs") did not contain information regarding the time and place of their removal proceedings. We disagree.

In *Banegas Gomez v. Barr*, 922 F.3d 101, 112 (2d Cir. 2019), we held that "an NTA that omits information regarding the time and date of the initial removal hearing is nevertheless adequate to vest jurisdiction in the Immigration Court, at least so long as a notice of hearing specifying this information is later sent to the" applicant. We observed that the "regulations governing removal proceedings . . . address when jurisdiction vests in the Immigration Court," and that "the regulations require that an NTA contain the time, date, and place of a hearing only '*where practicable.*'" *Id*. at 111 (quoting 8 C.F.R. § 1003.18(b)). Because requiring an NTA to always provide time, place, or date information "would render meaningless these regulations' command that such information need only be included 'where practicable,'" we rejected the petitioner's argument that his NTA, which lacked time and date of hearing information, did not vest jurisdiction in the immigration court when this information was specified in a subsequent notice of hearing. *Id*. at 111–12 (alteration adopted) (internal quotation marks and citation omitted).

Here, Petitioners' NTAs stated that their removal proceedings would be held on a date and time to be determined. *See* Certified Administrative Record ("CAR") at 581 (Leonard); *id*. at 636 (Liljana). Petitioners were later served with notices of hearings that specified the dates and times of their proceedings. *See* CAR at 528, 569. Their NTAs were thus "adequate to vest jurisdiction in the Immigration Court," because notices of hearings specifying the required information were later sent to Petitioners. *Banegas Gomez*, 922 F.3d at 112. Although Petitioners argue that *Banegas Gomez* is not good law following the Supreme Court's decision in *Niz-Chavez v. Garland*,

3

593 U.S. 155 (2021), this argument is squarely "foreclosed by our precedents" concluding otherwise. *Medley v. Garland*, 71 F.4th 35, 40 (2d Cir. 2023); *accord Chery v. Garland*, 16 F.4th 980, 987 (2d Cir. 2021) ("*Banegas Gomez* remains good law even after the Supreme Court's opinion in *Niz-Chavez*.").

## II. Asylum, Withholding of Removal, and CAT Relief

Petitioners challenge the denial of their applications for asylum, withholding of removal, and CAT relief, arguing that the agency's adverse credibility finding was not supported by substantial evidence. We disagree.

"To qualify for asylum, an applicant must show that he is a 'refugee'—that is, he 'is unable or unwilling to return to his home country because of past persecution or a well-founded fear of future persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.'" *Pinel-Gomez v. Garland*, 52 F.4th 523, 528 (2d Cir. 2022) (alterations adopted) (quoting 8 U.S.C. §§ 1101(a)(42)(A), 1158(b)(1)(B)(i)). "To qualify for withholding of removal, an applicant must show a clear probability of persecution, *i.e.*, that it is more likely than not that the [applicant] would be subject to persecution." *Id.* (alteration adopted) (internal quotation marks and citation omitted). "The 'clear probability' standard for withholding of removal is more demanding than the 'well-founded fear' standard for asylum"; thus, "an applicant who fails to establish eligibility for asylum fails to establish eligibility for withholding of removal." *Wei Sun v. Sessions*, 883 F.3d 23, 28 (2d Cir. 2018). "Finally, to qualify for CAT relief, an applicant must show 'that it is more likely than not that he or she would be tortured if removed to the proposed country of removal.'" *Pinel-Gomez*, 52 F.4th at 529 (quoting 8 C.F.R. § 1208.16(c)(2)). "[W]here an applicant's CAT claim and claims [for asylum and withholding of removal] are all based on the same evidence and theories, a petition for CAT relief may fail because

4

of an adverse credibility ruling rendered in the asylum or statutory withholding of removal context." *Id.* (internal quotation marks and citation omitted).

In determining whether an applicant has met his or her burden, the IJ "may weigh the credible testimony along with other evidence of record." 8 U.S.C. § 1158(b)(1)(B)(ii). When assessing an applicant's credibility, the IJ may consider, *inter alia*, "the consistency between the applicant's or witness's written and oral statements (whenever made and whether or not under oath, and considering the circumstances under which the statements were made), the internal consistency of each such statement, [and] the consistency of such statements with other evidence of record." 8 U.S.C. § 1158(b)(1)(B)(iii). We review the agency's "credibility findings[] under the substantial evidence standard, which requires that they be supported by reasonable, substantial and probative evidence in the record when considered as a whole." *Hong Fei Gao v. Sessions*, 891 F.3d 67, 76 (2d Cir. 2018) (internal quotation marks and citation omitted). We "will deviate from an adverse credibility determination only if, from the totality of the circumstances, it is plain that no reasonable fact-finder could make such an adverse credibility ruling." *Liang v. Garland*, 10 F.4th 106, 111 (2d Cir. 2021) (internal quotation marks and citation omitted).

Here, the IJ denied Petitioners' "asylum application because they did not support the application with credible testimony or otherwise meet their burden of proof and persuasion to show that they are 'refugees' within the meaning of the immigration laws." CAR at 40. We find that this adverse credibility determination was supported by substantial evidence. First, as the IJ noted, Leonard presented inconsistent bases for his fear of returning to Albania. On the first day of his credible fear interview, Leonard stated that he left Albania because he had "been threatened to be killed by members of the mafia." CAR at 588. Leonard claimed that the mafia threatened him after someone tried to steal scrap metal that Leonard had been hired to protect. When asked why

5

he told border patrol agents that he had a problem with the Democratic Party, Leonard responded that he "did not say this." CAR at 588. On the second day of his credible fear interview, however, Leonard stated that he was afraid he would be killed by members of the Democratic and Socialist Parties. At the hearing before the IJ, Leonard denied being threatened by the mafia and testified that his "life was in danger for political reasons." CAR at 196; *see also id.* at 200 (Q: "Let me ask you this way, truth or not the truth, were you threatened by the Mafia? Yes or no?" A: "No."). Liljana, on the other hand, testified at the hearing that Leonard left Albania because he was afraid of the mafia, but also later clarified that the government was part of the Albanian mafia.

Moreover, as the IJ noted, Leonard offered inconsistent details regarding the political persecution he allegedly suffered in Albania. For example, on the second day of his credible fear interview, Leonard claimed that the local police had on two occasions detained him and "hit [him] on the soles of [his] feet so no one could see."[1] CAR at 518. But when Leonard was asked at the hearing to describe his treatment during these arrests, he did not mention harm to his feet, despite mentioning that he had been struck elsewhere on his body. Finally, Leonard provided inconsistent reasons for why he felt he was persecuted by the Socialist and Democratic Parties. At his hearing, Leonard testified that he left the Democratic Party because Paulin Sterkaj joined that party, and that his persecution was at the behest of Sterkaj. On the second day of his credible fear interview, by contrast, Leonard did not mention Sterkaj at all when recounting why he left the Democratic party for the CDP and why he was persecuted for his CDP affiliation. The IJ reasonably found these to be significant inconsistencies or omissions. *See Hong Fei Gao*, 891 F.3d at 78–79.

Petitioners argue that the IJ erred in relying on notes from Leonard's first credible fear interview when making the adverse credibility determination. To be sure, this Court has cautioned

---

[1] On the second day of his credible fear interview, Leonard did not mention any injury to any other particular part of his body.

that "the BIA [and IJ] must be cognizant of the [credible fear] interview's limitations when using its substance against an asylum applicant." *Ramsameachire v. Ashcroft*, 357 F.3d 169, 179 (2d Cir. 2004). Nonetheless, we have held that the agency may consider statements made in a credible fear interview when assessing an applicant's credibility so long as "the record of [the] credible fear interview displays the hallmarks of reliability." *Ming Zhang v. Holder*, 585 F.3d 715, 725 (2d Cir. 2009). In other words, if, after reviewing the totality of the circumstances, the agency "concludes that the record of the interview and the [applicant's] statements are reliable, then the agency may, in appropriate circumstances, use those statements as a basis for finding the [applicant's] testimony incredible." *Ramsameachire*, 357 F.3d at 180. We have found "hallmarks of reliability" in the record of a credible fear interview where, for example: (1) "the proceeding was memorialized in a typewritten document setting forth the questions put to petitioner as well as her responses," even if "it is unclear whether the credible fear interview report purports to be a verbatim account of the interview"; (2) "the interview was conducted with the aid of a[n] . . . interpreter and petitioner does not contend that she did not understand the questions presented"; (3) "the interviewing officer explained the purpose of the interview, the importance of providing full and accurate testimony, and the fact that petitioner could ask for clarification at any point during the proceedings"; and (4) "petitioner was asked questions that were clearly designed to elicit a potential basis for an asylum claim." *Ming Zhang*, 585 F.3d at 725 (internal quotation marks and citations omitted).

Here, Leonard's credible fear interviews were memorialized in typewritten documents summarizing the questions put to him and his responses, and the interviews were conducted through interpreters. The second interview was much more fulsome than the first and bears the hallmarks of reliability identified in *Ramsameachire*. Although Leonard claimed on the second day of his credible fear interview that he "[d]id not completely understand" the interpreter used on

7

the first day, CAR at 522; *see also id.* at 196, he had no complaints about the interpreter used on the second day. *Cf. Ramsameachire*, 357 F.3d at 180 ("[I]f the [applicant's] answers to the questions posed suggest that the [applicant] did not understand English or the translations provided by the interpreter, the [applicant's] statements should be considered less reliable.").

While the first interview was terminated without explanation, one aspect of Leonard's claim was clear and unmistakable; he asserted that he had fled Albania because of a fear of the "mafia" (and not the Democratic Party), and he provided a detailed explanation as to the basis for that fear. *See* CAR at 588. Furthermore, at the start of the second day of Leonard's credible fear interview, the interviewing officer reviewed the notes from the first day concerning his fear of returning to Albania, and provided Leonard with an opportunity to make corrections. Leonard made only one correction—noting that he was employed in Albania as "a private guard, not private police"—and *did not* correct his statement regarding his fear of the mafia, and not a political party. CAR at 517. This effectively constitutes a reaffirmation of that statement at the second interview. Indeed, when asked during his hearing before the IJ about his statements regarding the "mafia" incident, Leonard did not assert it was an interpreter error, but rather acknowledged: "Yes, I said them in the first interview." CAR at 197. However, he asserted that it "wasn't true" and that he made the statements because he was afraid of being sent back to Albania and was "very stressed out." CAR at 199.

We thus conclude that the second credible fear interview in this case, at least, was sufficiently reliable to be considered in the credibility analysis, that Leonard reaffirmed the untruthful statement on which the IJ's adverse credibility determination primarily rests in that interview, and that Leonard has failed to demonstrate that a reasonable factfinder would be

8

compelled to credit his explanation for the inconsistency.[2]  *See Majidi v. Gonzales*, 430 F.3d 77, 80 (2d Cir. 2005) ("A petitioner must do more than offer a plausible explanation for his inconsistent statements to secure relief; he must demonstrate that a reasonable fact-finder would be *compelled* to credit his testimony." (internal quotation marks and citation omitted)).

Finally, the BIA correctly concluded that Petitioners waived any challenge to the IJ's finding that the remaining documentary evidence did not rehabilitate Leonard's testimony.  They did not raise an argument regarding the documentary evidence in their brief to the BIA, nor do they raise any such argument here.  *See Yueqing Zhang v. Gonzales*, 426 F.3d 540, 541 n.1 (2d Cir. 2005) (deeming claim abandoned where petitioner's brief did not address it); *see also Lin Zhong v. U.S. Dep't of Just.*, 480 F.3d 104, 123 (2d Cir. 2007) (explaining that "usually . . . issues not raised to the BIA will not be examined by the reviewing court"), *abrogated on other grounds by Santos-Zacaria v. Garland*, 598 U.S. 411 (2023).  That unchallenged finding lends further support to the adverse credibility determination.  *See Shunfu Li v. Mukasey*, 529 F.3d 141, 146–47 (2d Cir. 2008) (noting that waived issues could support adverse credibility determination); *Biao Yang v. Gonzales*, 496 F.3d 268, 273 (2d Cir. 2007) ("An applicant's failure to corroborate his or her testimony may bear on credibility, because the absence of corroboration in general makes an applicant unable to rehabilitate testimony that has already been called into question.").

In sum, substantial evidence supports the adverse credibility determination given the inconsistencies, omissions, and lack of reliable corroboration in the record, particularly because the inconsistencies and omissions relate to the events that form the basis for Leonard's claims of persecution.  *See Likai Gao v. Barr*, 968 F.3d 137, 145 n.8 (2d Cir. 2020) ("[E]ven a single

---

[2] Notwithstanding any other errors identified by Petitioners, such as the IJ's incorrect statement that Leonard had signed and initialed the notes from the credible fear interviews, we can "confidently predict that the agency would reach the same conclusion absent the identified errors." *Lin v. U.S. Dep't of Just.*, 453 F.3d 99, 108 (2d Cir. 2006) (footnote, internal quotation marks, and citation omitted).

inconsistency might preclude an [applicant] from showing that an IJ was compelled to find him credible. Multiple inconsistencies would so preclude even more forcefully."); *Xian Tuan Ye v. Dep't of Homeland Sec.*, 446 F.3d 289, 294 (2d Cir. 2006) ("Where the IJ's adverse credibility finding is based on specific examples in the record of inconsistent statements . . . about matters material to [a] claim of persecution . . . , a reviewing court will generally not be able to conclude that a reasonable adjudicator was compelled to find otherwise." (internal quotation marks and citation omitted)). The adverse credibility determination was dispositive of all forms of relief, because each of the claims relied on Leonard's alleged past harm and his political activities. *See Paul v. Gonzales*, 444 F.3d 148, 156–57 (2d Cir. 2006).

*       *       *

For the foregoing reasons, the petition for review is **DENIED**. All pending motions and applications are **DENIED** and stays **VACATED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

10