23-7465
Acero-Zaruma v. Bondi

BIA
Harbeck, IJ
A202 066 869

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 25th day of July, two thousand twenty-five.

PRESENT:
> PIERRE N. LEVAL,
> MYRNA PÉREZ,
> SARAH A. L. MERRIAM,
> *Circuit Judges.*

_____

JOSE BALTAZAR ACERO-ZARUMA,
> *Petitioner,*

v.        23-7465

       NAC

PAMELA BONDI, UNITED STATES ATTORNEY GENERAL,
> *Respondent.*

_____

**FOR PETITIONER:**  Michael W. Pottetti, Port Jefferson, NY.

**FOR RESPONDENT:**  Brian M. Boynton, Principal Deputy Assistant Attorney General; John S. Hogan, Assistant Director; Todd J. Cochran, Senior Trial Attorney, Office of Immigration Litigation, United States Department of Justice, Washington, DC.

UPON DUE CONSIDERATION of this petition for review of a Board of Immigration Appeals ("BIA") decision, it is hereby ORDERED, ADJUDGED, AND DECREED that the petition for review is DENIED.

Petitioner Jose Baltazar Acero-Zaruma, a native and citizen of Ecuador, seeks review of a September 26, 2023, decision of the BIA affirming an October 18, 2019, decision of an Immigration Judge ("IJ") denying his application for asylum and withholding of removal.[1]  *In re Acero-Zaruma,* No. A 202 066 869 (B.I.A. Sept. 26, 2023), *aff'g* No. A 202 066 869 (Immig. Ct. N.Y. City Oct. 18, 2019).  We assume the parties' familiarity with the underlying facts and procedural history.

---

[1] We do not address Acero-Zaruma's claim under the Convention Against Torture ("CAT") because the BIA found it "waived," Certified Administrative Record at 3 n.1, and Acero-Zaruma does not challenge that finding or the denial of the claim here.  S*ee Debique v. Garland*, 58 F.4th 676, 684 (2d Cir. 2023) ("We consider abandoned any claims not adequately presented in the appellant's brief, and an appellant's failure to make legal or factual arguments constitutes abandonment." (quotation marks omitted)).

We have reviewed the IJ's decision as supplemented by the BIA. *See Yan Chen v. Gonzales*, 417 F.3d 268, 271 (2d Cir. 2005). We review the agency's factual findings, including adverse credibility determinations, for substantial evidence, and we review questions of law and the application of law to fact de novo. *Hong Fei Gao v. Sessions*, 891 F.3d 67, 76 (2d Cir. 2018). "[T]he administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).

An applicant for asylum has the burden to demonstrate past persecution or a well-founded fear of future persecution on account of a protected ground. 8 U.S.C. §§ 1101(a)(42), 1158(b)(1)(B)(i); *Pan v. Holder*, 777 F.3d 540, 543 (2d Cir. 2015). An applicant's testimony may be sufficient to satisfy his burden, "but only if . . . [it] is credible, is persuasive, and refers to specific facts sufficient to demonstrate" that he is entitled to relief. 8 U.S.C. § 1158(b)(1)(B)(ii); *see also Pinel-Gomez v. Garland*, 52 F.4th 523, 529–30 (2d Cir. 2022).

**I.     Credibility**

"Considering the totality of the circumstances, and all relevant factors, a trier of fact may base a credibility determination on . . . the inherent plausibility of the applicant's . . . account, the consistency between the applicant's . . . statements

3

. . . , the internal consistency of each such statement, the consistency of such statements with other evidence of record . . . , and any inaccuracies or falsehoods in such statements, without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim, or any other relevant factor." 8 U.S.C. § 1158(b)(1)(B)(iii). Substantial evidence supports the adverse credibility determination.

Acero-Zaruma alleged that he was persecuted and feared future persecution because of the following incident. In 2012, a group of his friends tricked him into stealing a guitar from a gang member's house. The owner caught him; accused him of stealing, but also asked him to join a gang; and beat him and broke his leg, but then took him to a hospital. This incident resulted in a lawsuit in which Acero-Zaruma prevailed and his assailant was sentenced to prison. He remained at home during his recovery and then resumed attending classes until leaving Ecuador in 2015. Acero-Zaruma alleged that the gang wanted revenge and members of his indigenous community would beat or kill him because he had failed to pursue his legal claim through an indigenous justice system.

In finding Acero-Zaruma not credible, the IJ reasonably relied on inconsistencies regarding the year he took the guitar and who initiated the lawsuit.

4

8 U.S.C. § 1158(b)(1)(B)(iii). As to the year he took the guitar, the IJ was not required to accept his explanation that he was confused. *See Majidi v. Gonzales*, 430 F.3d 77, 80 (2d Cir. 2005). Acero-Zaruma now argues that the IJ should have excused the inconsistency given his young age at the time of the incident; but he did not offer that explanation to the agency, and he gave a specific date in his written statement.

As to who initiated the lawsuit, Acero-Zaruma wrote in his statement that he and his family took the gang members to court, but he testified at his hearing that gang members sued him. When asked about his written statement, he denied filing the lawsuit, and said that he meant that he defended himself. That response did not explain why he wrote that he took the gang to court.[2]

The IJ also reasonably concluded that Acero-Zaruma's account was implausible. 8 U.S.C. § 1158(b)(1)(B)(iii). The IJ reasonably doubted aspects of Acero-Zaruma's account of his injury and the lawsuit—for example, that Acero-Zaruma believed he had permission to go into the house, and that a gang member

---

[2] Notably, Acero-Zaruma's response at the hearing was also inconsistent with an Ecuadorian provincial court judgment in the record, which identifies Acero-Zaruma's mother as the person who initiated the proceeding. That judgment also contradicts Acero-Zaruma's account by making findings that he engaged in misconduct in his assailant's house beyond taking a guitar.

would voluntarily expose himself to the power of the courts over a dispute in which he had been the physical aggressor. And as to his fear of the indigenous community, the IJ reasonably doubted that the community would be angry that Acero-Zaruma defended himself from a lawsuit someone else brought against him, or that he would be harmed if removed given that he had remained unharmed in his community for more than a year during and immediately after the lawsuit.

Finally, the agency reasonably relied on the absence of reliable corroboration as further support for the adverse credibility determination. "An applicant's failure to corroborate his or her testimony may bear on credibility, because the absence of corroboration in general makes an applicant unable to rehabilitate testimony that has already been called into question." *Biao Yang v. Gonzales*, 496 F.3d 268, 273 (2d Cir. 2007). Acero-Zaruma argues that the agency should have given more weight to a statement from an attorney in Ecuador, who asserted that it was unsafe for Acero-Zaruma to return because indigenous people are beaten or killed if they use the "ordinary" justice system instead of the indigenous justice system. But the IJ reasonably relied on other evidence to reach its adverse credibility conclusion and was not compelled to find the attorney's

testimony dispositive.   Acero-Zaruma does not challenge the weight the agency assigned to other evidence, and he does not argue that such evidence adequately corroborated other aspects of his claim found not credible.   He has thus abandoned those issues.   *See Debique*, 58 F.4th at 684.

## II.   Burden

The adverse credibility determination did not end the IJ's analysis because the IJ credited some aspects of Acero-Zaruma's claim that were corroborated by other evidence—that he suffered a broken leg, and that he was indigenous—and assumed arguendo that he had been recruited by gang members.   The agency did not err in concluding that Acero-Zaruma failed to establish past persecution or a well-founded fear of future persecution on account of a protected ground based on these facts.

The protected grounds asserted (or considered by the agency sua sponte) were Acero-Zaruma's indigenous race, Evangelical Christian religion, imputed anti-gang political opinion, and membership in particular social groups of people who oppose gang recruitment, and indigenous people who seek official redress rather than indigenous justice.   Acero-Zaruma does not directly argue that he established a nexus to one of these protected grounds.   Instead, he argues that the

7

BIA should have remanded for further consideration of nexus in light of the intervening decision in *Matter of A-B-*, 28 I. & N. Dec. 307 (2021) ("*Matter of A-B- III*"), *vacating* 27 I. & N. Dec. 316 (A.G. 2018) ("*Matter of A-B- I*").[3]  *Matter of A-B- I*, which the IJ cited, addressed the circumstances under which "being a victim of private criminal activity constitutes persecution on account of membership in a particular social group," but did not directly speak to the standards for establishing a nexus to race or political opinion.  27 I. & N. Dec. at 325.  The BIA did not abuse its discretion in declining to remand because it reasonably concluded that the outcome would be the same under current precedent.  *See Li Yong Cao v. U.S. Dep't of Just.*, 421 F.3d 149, 156–57 (2d Cir. 2005) (explaining that "[a] motion to remand that relies on newly available evidence is held to the substantive requirements of a motion to reopen" and is reviewed for abuse of discretion).

Acero-Zaruma's broken leg was not sufficient to establish past persecution because his account was not credible as to how or why his leg was injured.  And even crediting his account that the injury was inflicted by a gang member after he

---

[3] *Matter of A-B-*, 28 I. & N. Dec. 199 (A.G. 2021) ("*Matter of A-B- II*"), also vacated by *Matter of A-B- III*, is not relevant here because it was both decided and vacated in the period between the IJ and BIA decisions.

8

refused to join a gang, Acero-Zaruma failed to demonstrate a nexus to a protected ground. His statements were inconsistent about whether his friends were gang members, and he never testified that those friends singled him out because of his race, religion, or opposition to gangs (whether viewed as a particular social group or political opinion). Likewise, he did not present evidence suggesting that the person who broke his leg was motivated by his race or religion; Acero-Zaruma testified that he stole from that person's house and refused to join his gang, but he did not testify that his assailant said anything about his other traits specifically.

Instead, Acero-Zaruma appears to assert that being beaten for refusing to join a gang alone is sufficient to establish a nexus to a protected ground under current precedent. It is not. "[O]pposition to criminal elements such as gangs, even when such opposition incurs the enmity of these elements, does not thereby become *political* opposition simply by virtue of the gang's reaction." *Zelaya-Moreno v. Wilkinson*, 989 F.3d 190, 201 (2d Cir. 2021). To be "political in nature, . . . beliefs and actions taken in support of them must have some political ambition in mind—or, for an imputed claim, must be perceived in this manner." *Id.* at 199; *see id.* at 198 (explaining that opposition to gangs might amount to political activity if the applicant sought to vindicate the rights of others, organize other victims, or

9

publicize a widespread problem). There is no evidence that Acero-Zaruma had or was perceived to have such ambition; the record suggests that the gang instead had only ordinary criminal incentives to defend its authority and expand its ranks. *Cf. Quituizaca v. Garland*, 52 F.4th 103, 114–15 (2d Cir. 2022) (record did not compel the conclusion that a protected ground was "one central reason" for gang abuse when circumstances suggested that the gang was motivated by ordinary criminal incentives). And the agency properly concluded that Acero-Zaruma's proposed particular social group of people who oppose gang recruitment was not cognizable absent evidence of a consensus in Ecuador about what actions constitute opposition to gang recruitment, or about whether such people are considered a distinct group by Ecuadorian society. *See Hernandez-Chacon v. Barr*, 948 F.3d 94, 101 (2d Cir. 2020) ("To constitute a particular social group, a group must be: (1) composed of members who share a common immutable characteristic, (2) defined with particularity, and (3) socially distinct within the society in question." (quotation marks and citation omitted)).

Absent past persecution, Acero-Zaruma had the burden to establish a well-founded fear of future persecution on a protected ground. 8 C.F.R. § 1208.13(a), (b)(2). The agency did not err in finding that he failed to demonstrate an

objectively reasonable fear of future persecution. *See Ramsameachire v. Ashcroft*, 357 F.3d 169, 178 (2d Cir. 2004) (requiring an applicant to establish "that he subjectively fears persecution and . . . that his fear is objectively reasonable"). Acero-Zaruma alleged a fear of further violence by the gang that previously harmed him, but as discussed earlier, he provided no basis to find a nexus between such harm and a protected ground.[4] And while he also alleged that he was threatened by the indigenous community for having sought "official" justice, the IJ did not credit that aspect of his claim.[5]

The above findings were also dispositive of Acero-Zaruma's claim for withholding of removal, which relied on the same discredited facts and which similarly requires a showing of a nexus to a protected ground. *See* 8 U.S.C. § 1231(b)(3)(A); *Quituizaca*, 52 F.4th at 105–06 (holding that "one central reason" standard for asylum also applies to withholding of removal); *Hong Fei Gao*, 891 F.3d at 76 ("Where the same factual predicate underlies a petitioner's claims for

---

[4] The lawsuit concluded in March 2013; his assailant received only one month imprisonment and Acero-Zaruma remained in his community in Ecuador until October 2015 without further harm from any source.

[5] It is therefore unnecessary to decide whether a particular social group of indigenous people who use the non-indigenous justice system is cognizable.

asylum, withholding of removal, and protection under the CAT, an adverse credibility determination forecloses all three forms of relief."). Finally, the past persecution findings were also dispositive of humanitarian asylum, which is available only to applicants who have shown past persecution on account of a protected ground.[6]  *See* 8 C.F.R. § 1208.13(b)(1)(iii) (providing for humanitarian asylum absent a fear of future persecution where applicant established past persecution on account of a protected ground and either that the past persecution was severe or that the applicant would suffer "other serious harm upon removal").

---

[6] Acero-Zaruma argues that the IJ's decision was inconsistent about whether he established past persecution on a protected ground for humanitarian asylum. But the alleged inconsistency results from a clear scrivener's error. The IJ's decision states that the incident resulting in Acero-Zaruma's broken leg "does not have a nexus to a protected ground," and it should have then continued to say that because he "has [*not*] been able to meet his burden of establishing past persecution under a protected ground, he is not eligible for a grant of humanitarian asylum." Certified Administrative Record at 50.

For the foregoing reasons, the petition for review is DENIED. All pending motions and applications are DENIED and stays VACATED.

FOR THE COURT:
Catherine O'Hagan Wolfe,
Clerk of Court